## GILES REMEDY CO. *v.* GILES.

---

TRADEMARKS; INTERFERENCE; APPEALS UNDER ACT OF FEBRUARY 20, 1905; TITLE TO CERTIFICATE; PARTNERSHIP.

1. A trademark interference declared under the act of 1881, but not decided until after the passage of the act of February 20, 1905, is appealable to this court under the act of February 20, 1905, where the application involved has been amended to bring it under the provisions of that act.

2. A trademark application which was involved in an interference at the time of the passage of the act of February 20, 1905, is a pending application, such as may be amended to bring it under the act.

3. Where a son is the first to adopt and use a trademark, and has not parted with his interest in it, and has continued its use, he does not, by acquiescing in its use by his father jointly with him, forfeit his right to claim the trademark as his own property.

4. The title to a certificate of registration of a trademark, if claimed under some act or set of acts, done or performed after its issue, cannot as a rule be determined in an interference proceeding. Such question is to be tried in a proceeding brought to compel the assignment of the issued certificate, or by some analogous proceeding.

5. An interference proceeding under the trademark law is instituted to determine priority of adoption and use, and, when that question is decided, the inquiry is at an end. If a later applicant seeks to reregister the mark for any lawful reason, and it appears that his title is based upon the same adoption and use as claimed by the prior registrant, he has no standing in interference, unless, at least, he

shows that the entire right, title, and interest in the trademark have become vested in him.

6. Registration of a trademark is grantable only to its owner, and such owner is the one first to adopt and use the mark as provided by law.

7. The right to use a trademark owned by a partnership is generally, after the dissolution of the partnership, vested in all of the members who continue in the same line of trade.

8. In the absence of an express agreement, a trademark used theretofore by one who enters a partnership does not, at the dissolution of the partnership, caused by the withdrawal of the member bringing the mark into the partnership, remain the property of the partnership.

9. It is a general rule that, when a partner retires from a partnership, and assents to the retention by the other partners of the old place of business, and to the future conduct of the business by them, a trademark brought into the partnership by such retiring partner remains with the firm. But this rule does not apply unless the retirement is voluntary, and unless the retention of the business is acquiesced in.

No. 321. Patent Appeals. Submitted November 23, 1905. Decided December 12, 1905.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Walter H. Chamberlin* and *Mr. George L. Wilkinson* for the appellant.

*Mr. W. Clyde Jones* and *Mr. George R. Hamlin* (*Messrs. Lyman, Busby, & Lyman* and *Messrs. Jones & Addington* being with them on the brief) for the appellee.

Mr. Justice DUELL delivered the opinion of the Court:

Preliminary to a decision as to the correctness of the finding of the Commissioner of Patents that priority of adoption and use of the trademark in issue was by the appellee, Sanford F. Giles, we are called upon to determine whether this is a case where an appeal lies to this court, a motion having been made to dismiss

the appeal on the ground that this court is without jurisdiction to entertain the appeal. The material facts disclosed by the record will be briefly stated. Under the law of 1881 a certificate of regristration of the trademark in controversy was granted to Sanford F. Giles on June 29, 1897. The Giles Remedy Company, a corporation of the State of Illinois, on September 15, 1904, made application for substantially the same trademark, and interference on October 11, 1904, was declared between Sanford F. Giles, the registrant, and the application of the Giles Remedy Company. Both parties took proofs, and on the proofs and proceedings a hearing was had before the Examiner of Interferences, who, on March 11, 1905, found in favor of the registrant, Sanford F. Giles. Limit of appeal was fixed to expire March 31, 1905, and on that date an appeal to the Commissioner was duly taken. The decision of the Examiner of Interferences was affirmed by the Commissioner on June 29, 1905. Under the law of 1881 an appeal did not lie to this court in interferences relating to trademarks. Such appeal was provided for by the law of 1905, which went into effect April 1, 1905. Section 24 of that law made the following provision for pending trademark cases:

"Section 24. That all applications for registration pending in the office of the Commissioner of Patents at the time of the passage of this act may be amended with a view to bringing them, and the certificate issued upon such applications, under its provisions, and the prosecution of such applications may be proceeded with under the provisions of this act." [33 Stat. at L. 730, chap. 592, U. S. Comp. Stat. 1901, p. 677.]

The appellant, being an applicant, on the 6th of April, 1905, filed its petition asking to amend the application involved in this proceeding to bring it within the provisions of the act, and this petition was received and approved by the Patent Office.

We do not see how the Patent Office could have lawfully refused the petition, for the application of the Giles Remedy Company for registration of its claimed trademark was pending in the office of the Commissioner of Patents at the time of the passage of the act. While the act did not take effect until April

1, 1905, it was passed—that is, approved—February 20, 1905.
On that date the Examiner of Interferences had not filed any
decision, and of course no appeal had been taken to the Com-
missioner of Patents.    At the April, 1905, term of this court
we reviewed at length the question as to what was a pending
application for registration of a trademark as that term was used
in the act of 1905, and under our ruling in that case, to which
reference is made,* without again stating our conclusions and
the reasons therefor, the application of the Giles Remedy Com-
pany, appellant, is clearly a "pending" application, and was
such not only on the 20th of February, 1905, when the act was
approved, but also on April 1, 1905, when it went into effect.
Section 7 of the act provides for the declaration of an inter-
ference between a registered mark and an application for the
registration of a conflicting mark, and section 9 provides for an
appeal in such interferences to this court.    Appellant is right-
fully in this court, and the motion to dismiss his appeal must
accordingly be denied.

This brings us to the consideration of the merits of the appeal.
The facts, so far as they are material to the decision of any ques-
tions which are properly before us in this proceeding, are sub-
stantially these:

Daniel S. Giles, Sr., through whom the Giles Remedy Com-
pany, appellant, became vested with any claim of title it may
have to the trademark in question, undoubtedly originated the
medicine in connection with which the trademark is used, and
disposed of it by gift or sale, in small quantities, for years be-
fore Sanford F. Giles put the medicine on the market.    Both
father and son sold the medicine before the trademark came into
being.    It is equally well proved that Sanford F. Giles originat-
ed the trademark, and in September, 1894, caused labels for bot-
tles, and also other printed matter, to be printed by a printing
establishment located at Kansas City.    These labels had on
them a seal with serrated edges and upon the seal the words
"Giles Magic Lotion."    At that time he lived at Pleasanthill,

---

*Re Mark Cross Co. ante* p. 101.—Reporter.

Missouri, and was by occupation a telegraph operator. For a year or more prior to September, 1894, he had sold the medicine, probably using the trademark, and had put it out under the name of the Giles Remedy Company. He was undoubtedly the first to use that tradename. In 1896 he removed to Kansas City, and for a time lived with his father both engaged in putting the medicine on the market in a happy-go-lucky sort of a way. There was no partnership, at least at the commencement of their relations, and, so long as they continued to live at Kansas City, it can hardly be said that this record discloses that their relations amounted in law to a partnership relation. A bank account was kept by Sanford, but that does not prove that the business carried on was his nor does it tend to prove a partnership. From an examination of the testimony we conclude that each sold what he could and used the proceeds as he pleased; that each sought to make a living out of the business, and as long as one had enough for that object he cared little what amount of money the other made out of the business. It was a relation that was quite natural between a father and son whose feelings for each were natural, and such as often exists between father and son. The business at first was small, and each worked in an independent sort of a way, and each in his own way sought to increase the business. We fail to discover sufficient to warrant us in a conclusion that in the spring of 1897, when Sanford executed and filed the application for registration of the trademark, he had devested himself of the right to file the application in his own name, so that a trademark could be lawfully issued to him upon his own application. No doubt his father thought, and had a right to think, that the trademark was to be used by him as well as by Sanford. But the latter, having been the first to adopt and use the trademark, and not having parted with his interest in it, and having continued its use, had not, by acquiescing in its use by his father in the manner shown, forfeited his right to claim the mark as his own property. Conceding that his father furnished the money used in procuring the trademark, we cannot, in view of the loose way in which the business was carried on, infer or find from that fact that a part-

nership existed between them. It was in fact at that time the same as though two peddlers living under the same roof, made up their packs without paying much attention to who paid the most for the goods they sold, or what became of the proceeds so long one if he had more money than he needed would lend it to the other. It was a very natural relation, under the circumstances, to exist. We hardly think that the father's right to use the mark had, in the spring of 1897, ripened into a legal right that he could then have enforced. Undoubtedly as the years passed and the business increased, and books were kept and a bank account was kept in the name of the Giles Remedy Company (a trade-name devised by Sanford F. Giles) against which both could check, there developed a more business-like relation. But, as we look at the question we are called upon to decide, any finding we might make as to the later relations between the father and son, and their several relations to the business, would be of no moment. Another forum is provided for the determination of those questions. If Sanford F. Giles was the first to adopt and use the trademark in question, and not having ceased to use, or not having parted with the legal title to register the mark when he did,—all which we have found,—it would be a vain thing for us to find that after the registration he had parted with an interest, or any part, of the exclusive right to use the mark. The title to the certificate of registration, if claimed under some act or set of acts done or performed, after its issue, cannot, as a rule, be determined in an interference proceeding. Such question is, we apprehend, to be tried in a proceeding brought to compel the assignment of the issued certificate, or by some analogous proceeding. There may hereafter be found some exception to the general rule, but this is not one and we have now none in mind. An interference proceeding under the trademark law is institut-ed to determine priority of adoption and use, and when it is found that one of the parties to the interference was the first to adopt and use the mark in accordance with the requirements of the law, and was the sole owner of the mark when he applied for and received the certificate of registration, the inquiry in-stituted by the interference proceedings terminates. If a later

applicant seeks to register the mark for any lawful reason, and it appears that his title is based upon the same adoption and use as claimed by the prior registrant, it cannot be successfully contended that he has any standing in an interference, unless, at least, he shows that the entire right, title, and interest in the mark have become vested in him. Appellant has failed to show this, for any right vested in the corporation, appellant, is such title as Daniel S. Giles, Sr., had in the mark when he attempted to assign all interest in the mark to it and caused the application for registration to be filed in its name. Daniel S. Giles, Sr., is not shown to have had at any time such title as would have permitted him to register the mark. He did not originate it, nor first put it in use. Nothing, so far as this record discloses, vested in him at any time the exclusive right to its use. That after its registration by Sanford F. Giles he acquired some rights, we think the record discloses. At the best, those rights are not shown to be exclusive, or to warrant a judgment of priority in his favor. The partnership, if it be admitted that a partnership existed between father and son, did not vest him with the exclusive right to the mark; and when the relation was terminated by the father's annexing the bank account, and the departure of the son from the common place of business, the condition that then arose did not in law vest the father with all rights to the mark on the ground that the son had abandoned his rights.

The propositions of law advanced by the appellee are well founded and sustained by many adjudicated cases. Briefly summed up, they are that registration of a trademark is grantable only to its owner, and such owner is the one first to adopt and use the mark as provided by law. The Trademark Acts of 1881 and 1905, and the adjudications under the former act, all sustain the proposition,—that the right to use a trademark owned by a partnership, after its dissolution, generally is vested in all of the members who continue in the same line of trade. *Menendez* v. *Holt,* 128 U. S. 514, 32 L. ed. 526, 9 Sup. Ct. Rep. 143. That in the absence of an express agreement, a trademark used theretofore by one who enters the partnership does not at the dissolution of the partnership, caused by the withdrawal of the mem-

ber bringing the mark into the partnership, remain the property of the partnership. 28 Am. & Eng. Enc. Law, 2d ed. p. 406, and cases there cited.

It is undoubtedly true, as urged by appellant, that when a partner retires from a partnership, and assents to the retention by the other partners of the possession of the old place of business and the future conduct of the business by them under the old name, the trademark remains with the latter. The facts in the present case do not warrant the application of that rule of law for the retirement must be voluntary, or thereafter acquiesced in, and the retention of the business must have also been acquiesced in, and not practically forced.

It appears that the parties to this interference are engaged in a litigation pending in the courts of the State of Illinois, and their respective rights to the registered trademark can there be determined. As before stated, we have no call to determine that question, having found that Sanford F. Giles lawfully registered the mark in controversy, and that the appellant has failed to show that after such registration it became the sole owner of the registered mark and of all rights thereto pertaining.

In our opinion the Commissioner of Patents was right in awarding judgment of priority of adoption and use of the trademark to the appellee, Sanford F. Giles, and his decision should therefore be affirmed. The clerk of the court will certify this opinion, and the proceedings in this court in the premises, to the Commissioner of Patents, according to law. *Affirmed.*