# B. FISCHER & COMPANY *v.* KNICKERBOCKER MILLS COMPANY.

---

TRADEMARKS; REGISTRATION; EVIDENCE; OPPOSITION; USE BY OPPOSER;
ACQUIESCENCE; SALE.

1. Upon opposition to the registration of a trademark, upon the sole
   ground that, having knowingly permitted its use by the opposer, the
   applicant is estopped to deprive him of the right to use it, and
   hence not entitled to registration, the applicant need not introduce
   evidence on any other question. (Citing *McIlhenny* v. *New Iberia
   Extract of Tobasco Pepper Co.* 30 App. D. C. 337; *Hannis Distill-
   ing Co.* v. *George W. Torrey Co.* 32 App. D. C. 530; and *Underwood
   Typewriter Co.* v. *A. B. Dick Co.* 36 App. D. C. 175) ; but he waives
   his right to confine the issue to this point by introducing evidence
   on other points.

2. There was no such acquiescence, by the applicant for the registration
   of a trademark, in its use by another, as to disentitle the appli-
   cant to registration upon opposition by the other, where the appli-
   cant, the rightful owner, upon learning of the opposer's use notified
   him to discontinue, and the opposer stated that such use had been
   in consequential and had about terminated, and the question whether
   the opposer afterwards stated that he intended to use the trademark
   is unimportant, where the subsequent use was so slight that the ap-
   plicant was unable to discover it. (Citing *Michigan Condensed
   Milk Co.* v. *Kenneweg Co.* 30 App. D. C. 491.)

3. No cause for refusing to register a trademark upon opposition is af-
   forded by the fact that the applicant has made a tentative sale of
   the mark dependent upon registration, and has discontinued its use
   without intent to abandon it.

No. 924.    Patent Appeals.    Submitted November 13, 1914.    Decided De-
cember 7, 1914.

HEARING on an appeal from a decision of the Commissioner
of Patents dismissing an opposition to the registration of a
trademark.                                                *Affirmed.*

The facts are stated in the opinion.

*Mr. Edward Bruce Moore* and *Mr. W. H. C. Clarke* for the appellant.

*Messrs. Steuart & Steuart* and *Mr. Sidney R. Perry* for the appellee.

Mr. Justice Robb delivered the opinion of the Court:

This appeal is from concurrent decisions of the Patent Office tribunals dismissing the opposition of B. Fischer & Company, appellant, to the registration of the word "Nectar" as a trademark by the Knickerbocker Mills Company, appellee.

The sole ground in the notice of opposition was that the applicant, having knowingly permitted the use of this word as a trademark by the opposer, now is estopped to deprive opposer of that right, and hence not entitled to registration. It was not necessary, therefore, for applicant to introduce evidence on any other question. *McIlhenny* v. *New Iberia Extract of Tobasco Pepper Co.* 30 App. D. C. 337; *Hannis Distilling Co.* v. *George W. Torrey Co.* 32 App. D. C. 530; *Underwood Typewriter Co.* v. *A. B. Dick Co.* 36 App. D. C. 175. But having introduced evidence of title and prior use, the applicant waived its right to confine the issue to the single point raised in the opposition. However, we agree with the Patent Office that the evidence clearly shows title and prior use in the applicant.

Coming to consider the question of estoppel, we find that when, in January, 1907, applicant learned that opposer was using its mark, it wrote opposer as follows: "We have recently discovered that you are selling a coffee under the brand 'Nectar,' and as this is a brand which we have used for over thirty years, we alone have the sole right to sell coffee under this brand, hence we must ask you to discontinue the use of it at once." In March following, the attorney for applicant wrote opposer in substance that he had been instructed to bring suit to compel the discontinuance by opposer of applicant's mark, but "would wait a few days to see what you have to say in relation to the matter." To this letter opposer made reply as fol-

lows: "We have your favor of the 8th in regard to the trade-mark 'Nectar,' which is claimed by the Knickerbocker Mills Company, your client. It has been our intention to give up this brand for some time, and we were simply allowing the old labels to run out. Inasmuch as it is of so small importance to us, we might as an act of courtesy to your client stop the sale of 'Nectar' Java without further question. However, we would like a few days to consider the matter more fully, and you may depend upon hearing again at that time as to our decision." A member of the opposer firm testified that shortly after the writing of this letter he called at the office of the applicant, and informed its President "most decidedly that we would continue this branch, and not waive any of our rights in the matter," and that the use of the mark was continued thereafter. The evidence of the opposer, however, as to the extent of the subsequent use of this mark, is vague and unsatisfactory.

The president of the applicant company was asked about the statement which the opposer's representative testified he made, to the effect that opposer would continue the use of the mark, and not waive any of its rights, and replied that "what he (opposer's representative) said left no such impression on my mind. My impression is that he told me the Nectar brand was of comparatively little value to him; that they established it for the purpose of exploiting a new brand of coffee at a fair either at Buffalo or Louisville; that they were selling very little of it; but he said at the same time something about our having failed to comply with the law covering trademarks, which I did not fully understand. That is all that I remember." It may be noted here that the recollection of this witness as to what was said by opposer's representative is in harmony with the letter of opposer written a few days before and already referred to. Applicant's testimony further tended to show that it was unable thereafter to learn of any further use by the opposer of its mark, and hence took no further steps in the matter.

We agree with the Patent Office that the evidence falls far short of showing such an acquiescence by the applicant in the

use of this mark by the opposer as to defeat applicant's right to it, or create a new right in the opposer.   As was said in *Menendez* v. *Holt,* 128 U. S. 514, 32 L. ed. 526, 9 Sup. Ct. Rep. 143: "The intentional use of another's trademark is a fraud; and when the excuse is that the owner permitted such use, that excuse is disposed of by affirmative action to put a stop to it. Persistence, then, in the use is not innocent; and the wrong is a continuing one, demanding restraint by judicial interposition when properly invoked.   Mere delay or acquiescence cannot defeat the remedy by injunction in support of the legal right, unless it has been continued so long and under such circumstances as to defeat the right itself."   See also *McLean* v. *Fleming,* 96 U. S. 245, 24 L. ed. 828; *Michigan Condensed Milk Co.* v. *Kenneweg Co.* 30 App. D. C. 491.   Here the applicant, the rightful owner of the mark, upon learning of its use by the opposer, promptly notified opposer of applicant's title and that opposer must discontinue such use.   The opposer met this notice with a written statement to the effect that the use had been inconsequential and had about terminated.   Whether, in the subsequent interview between the representatives of the parties, opposer then indicated an intent to continue the use of the mark is of little consequence, in view of the fact that its subsequent use was so slight that the applicant was unable to discover it.   Under the pleadings and evidence there is little question that opposer's original use of this mark was with knowledge of the rights of the applicant.   No business was therefore built up in good faith by the opposer, and the continuance and growth of that business was not encouraged by any act of the applicant.   On the contrary, as we have seen, the use of the mark by the opposer prior to the applicant's notice to discontinue it had been inconsequential, and the continuance of that wrongful use after notice was equally inconsequential.   The case as presented is devoid of any element of estoppel.

One other question may be noticed.   It developed that the applicant has made a tentative sale of this mark dependent upon its registration, and that, pending the determination of the question of registration, applicant has discontinued the use

of the mark, but without any intention of abandoning it. Since applicant was the owner of the mark when the application was filed, we fail to perceive wherein the opposer is interested in this tentative sale. Indeed, under section 10 of the trademark act the application itself, together with the good will of the business in which the mark was used, might have been assigned. Nor does the temporary discontinuance of a trademark deprive the owner thereof of the right of registration.

The decision is affirmed.                    *Affirmed.*