Argued March 4, affirmed as modified April 29, 1953, argued on
petition for rehearing January 6, former opinion
adhered to January 27, 1954

# PHILLIPS SCREW CO. *v.* GIVNAN and GIVNAN RECESSED SCREW CO.

256 P. 2d 253
265 P. 2d 1084

*Prescott W. Cookingham* and *Leo J. Hanley,* of Portland, argued the cause for appellant. With them on

the brief were Buckhorn & Cheatham and Eric Haessler, of Portland.

*McDannell Brown,* of Portland, argued the cause and filed a brief for respondents.

LATOURETTE, C. J.

This is an appeal from a decree vesting title to a certain patent in the defendants.

Plaintiff contends that while defendant James D. Givnan, a patent attorney, was employed by plaintiff to prepare, file and prosecute applications for patents to certain inventions relating to screws and screw drivers of various forms and for which said Givnan was paid thousands of dollars for such professional services, he, Givnan, on account of such confidential relationship, acquired confidential information relating to the business of plaintiff; that by reason of the information so gained said Givnan applied to the United States government for letters patent covering the invention aforesaid, based upon which a patent issued to said Givnan. It is further alleged that Givnan transferred certain rights to such patents to the defendant, Givnan Recessed Screw Company, with full knowledge on the part of said company of the aforesaid. Plaintiff in its prayer prayed that said defendants be declared and decreed to be trustees of said patent and that an injunction be issued restraining them from further operating under such patent.

Defendants joined issue by general denial and a separate defense in which it is alleged that after defendant James D. Givnan terminated his services with the plaintiff he carried on experimental work and "invented a new and improved type of recessed head

screw entirely distinct from the so-called Phillips screw or the cloverleaf screw or any other recessed head screw then or theretofore manufactured or invented," on which invention a patent issued.

Defendants further plead laches on the part of the plaintiff and that the plaintiff at all times recognized the ownership of the invention in James D. Givnan and has permitted him to expend substantial sums of money in the development of the invention and, therefore, is estopped from asserting any claim to Givnan's alleged invention or patents based thereon.

A trial was had, whereupon the court entered an interlocutory decree in favor of plaintiff with a further proviso that such decree would become permanent only in the event that within 30 days plaintiff paid to the defendant James D. Givnan "a sum of money which will bear the same ratio or proportion to Ten thousand Four hundred and Twenty-nine Dollars and twelve cents ($10,429.12) as said ownership in said patents shall bear to one-hundred per cent (100%)."

Plaintiff refused to pay any money to said defendant Givnan, whereupon the court entered a final decree reciting that plaintiff failed to make the payment as provided for in the interlocutory decree and decreed defendants to be the owners of the patents aforesaid. It is further provided in the decree that should the plaintiff appeal from the final decree and the decree should be affirmed plaintiff would still have 30 days from the date on which the mandate is entered within which to make the payments and to acquire title to the patent as aforesaid.

Defendants cross appeal from the portion of the decree allowing plaintiff 30 days to comply with the interlocutory decree if the decree should be affirmed on appeal.

■ Since we try this case de novo on appeal, it will be necessary for us to go into the issues as made by the pleadings. There is no question that defendant Givnan was guilty of breach of trust in obtaining the patent for his own account since he occupied a confidential relation with the company as its patent attorney, and the invention leading up to his patent unquestionably took shape in his mind during the ten years he was acting for the company. However, in the state of the record, this does not necessarily mean that plaintiff is entitled to the relief claimed in its complaint. There remain the questions of laches and estoppel to be considered.

In the early part of the year 1944, the defendant Givnan severed his connection with the plaintiff company, and about that time he obtained the patent in question. Shortly thereafter, H. F. Phillips, on account of poor health, resigned, as an officer of the plaintiff corporation, although his son, Harry L. Phillips, remained with the company. Mr. Prescott Cookingham, attorney in the case, remained as general counsel for the plaintiff and became its secretary and vice-president. Mr. Cookingham, in the latter part of the year 1944, entered into negotiations with Givnan and the elderly Phillips, whereby the plaintiff corporation, in some unexplained way, was to acquire 51 percent interest in the Givnan patent, paying Givnan therefor the sum of $50,000. Written documents were prepared with the knowledge of Mr. Cookingham, reciting that Givnan was the owner of the patent in question. About that time Givnan's invention and patent were submitted to the American Screw Company, with whom the plaintiff had dealings, to determine whether or not the Givnan patent had any commercial value. Re-

port came back from the American Screw Company to the plaintiff that said patent had no value, whereupon negotiations with Givnan were dropped. Nothing further was done in regard to the matter by the plaintiff until March 24, 1949, when Mr. Cookingham wrote a letter to Mr. Givnan, the pertinent part of which follows:

"I am writing you with respect to Patent No. 2,395,476 which has been issued in your name.

"Sometime ago when you were in our employ, it was brought to our attention that you had applied for a screw patent and at that time we made an investigation to determine whether or not the patent was worth developing. After a checkup by us, it did not seem to us that the invention had enough novelty or merit to justify our putting up any money for its development, and nothing further was done about it. At that same time we understood that you were making no claim and had no intention of developing the project for your own account, and we therefore gave the matter no further thought.

"It has now been brought to our attention that an attempt is being made to promote this screw actively among potential users, and under those circumstances it is, of course, going to be necessary for us to assert our rights.

"We have been advised by competent patent counsel that under the circumstances you have no right to continued ownership of the screw for various reasons.

"In the first place, our rather definite information is to the effect that you were not the actual inventor of the screw.

"In the second place, there is no question about the fact that the screw was developed and invented during the period when you were retained by the Phillips Screw Company in its behalf.

"In the third place, there are other bases upon which we might claim ownership of the screw, but

the two foregoing are very definite and clear, and
it is not necessary to rely on any of the others.

"* * * * * *"

■ While on the witness stand, Mr. Cookingham, in
explaining the meaning of the sentence, "At that same
time we understood that you were making no claim and
had no intention of developing the project for your own
account, and we therefore gave the matter no further
thought," testified that the information concerning the
above was obtained from Mr. H. L. Phillips. There
is nothing in the record to indicate that Mr. Phillips
was acting in behalf of Mr. Givnan when such state-
ment was made, and, of course, he therefore would not
be bound by the same.

During the intervening years between 1944 and
1949, Mr. Givnan organized the Givnan Recessed
Screw Company, co-defendant, and it expended thou-
sands of dollars in the development and exploitation
of his invention and patent. During that time 37.8 per
cent interest in the defendants' invention was sold to
some 18 innocent purchasers.

Mrs. Rose Greer, one of the purchasers, testified
that she had a conference with Mr. Cambern, president
of the plaintiff company, which is detailed as follows:

"A. I was introduced to Mr. Cambern shortly
after I invested in the Givnan stock, and by way
of conversation said to him, 'Well, I guess we will
have a little competition now.' And he said, 'Oh,
that has no value at all. Your money is lost, and
we can't see any value to it at all.'

"Mr. Brown: Q. Did he make any suggestions
or comment to you as to Mr. Givnan's ownership
of the invention? A. No; he just laughed at the
whole idea.

"Q. Didn't make any claim to the invention or

the patent rights on behalf of Phillips Screw Company? A. No, sir.''

Mr. James R. Stafford, who invested $2,500 in the Givnan invention, wrote to the Phillips Screw Company inquiring whether the Givnan screw had any merit as an investment. Mr. Stafford testified that a letter was written back to him, signed by Mr. Cambern, president of the company, stating that:

"A. He said that the Phillips—I don't recall whether he stated their engineers or the Company— had examined the Givnan Screw very carefully, and that they did not feel that it contributed anything to the art of making screws, and that little phrase is the one that always stuck in my memory as a rather peculiar way of expressing it, and that therefore they were not interested in it in any way. I believe I asked them in the letter that I wrote to them if they were interested in buying this interest, and he said they were not."

The present lawsuit was prompted, in our opinion, by the success of the defendants in projecting their invention. Having abandoned any interest in defendants' patent on account of the adverse report of the American Screw Company in 1944, and having disavowed any interest in the same not only to defendants but to its investors, and having lulled the defendants into a sense of security over the years by its silence, to defendants' detriment and disadvantage, equity will not permit plaintiff at this late time to enjoy the fruits of defendants' endeavors, and plaintiff is therefore estopped to assert any claim in the subject-matter of this controversy and certainly is guilty of laches in failing to make any claim to the same over a period of some five years. *Grand Prize Hydraulic Mines v. Boswell*, 83 Or 1, 151 P 368, 162 P 1063; *Sharkey v. Candiani*, 48 Or 112, 85 P 219.

In the case of *Pure Oil Co. v. Hyman,* 7 Cir, 95 F. P2d 22, it was held that the employer was estopped to assert a claim to a patent obtained by a former employee and was guilty of laches when it knew of his activities and asserted that the patent was of no value and that it was not interested and delayed a period of nine months before instituting action.

The portion of the decree permitting the plaintiff to pay to defendants the expenses incurred by defendants in case of affirmance in this court is of no effect, and is therefore set aside.

The decree will be affirmed, as modified.

WARNER, J., specially concurring.

I specially concur in the result and base my concurrence on the ground of laches rather than estoppel.

ON PETITION FOR REHEARING

*Thomas H. Tongue, III,* of Portland, argued the cause for the petitioner. With him on the brief were Cookingham & Hanley and Buckhorn & Cheatham, of Portland.

*McDannell Brown,* of Portland, contra.

LATOURETTE, C. J.

On rehearing it is asserted by plaintiff Phillips Screw Company that we were in error in holding that plaintiff was guilty of laches and estoppel. The alleged error is predicated in part on the following language we employed:

"There is nothing in the record to indicate that Mr. Phillips was acting in behalf of Mr. Givnan

when such statement was made, and, of course, he therefore would not be bound by the same."

■ If Frank Phillips were the agent of defendant Givnan at the time the conversation took place it might be an excuse for the plaintiff's failure to exert its rights with reference to the Givnan invention. The agency relied upon, however, is refuted by the allegations of the complaint wherein it is alleged:

"That from about 1932 to about 1944 said Henry F. Phillips served as an officer of the Phillips Screw Company and since that date has continued to serve as a technical adviser and consultant therefor."

There are some discrepancies in the evidence on this phase of the case. However, the impelling evidence supporting the above allegation may be found in the transactions involving the attempted purchase of a 51 per cent of the interest in Givnan's invention by Henry Phillips prior to the discovery of the worthlessness of the invention. It is quite clear to us that Henry Phillips was acting in said transaction for the plaintiff. This is supported by Mr. Cookingham's letter to Mr. Givnan, the pertinent portion of which is as follows:

"I am writing you with respect to Patent No. 2,395,476 which has been issued in your name.

"Some time ago when you were in our employ, it was brought to our attention that you had applied for a screw patent and at that time we made an investigation to determine whether or not the patent was worth developing. After a checkup by us, it did not seem to us that the invention had enough novelty or merit to justify our putting up any money for its development, and nothing further was done about it. At that same time we understood that you were making no claim and had no intention of developing the project for your own account, and we therefore gave the matter no further thought.

"It has now been brought to our attention that an attempt is being made to promote this screw actively among potential users, and under those circumstances it is, of course, going to be necessary for us to assert our rights."

The money mentioned in the letter obviously refers to the purchase of the 51 per cent interest aforesaid. That portion of the letter stating that the investigation to determine the value of the patent was made while Givnan was in the employ of the plaintiff company is an erroneous statement of the facts as the evidence clearly indicates that the investigation was made after Givnan had terminated his relationship with the plaintiff. It therefore appears, not only from plaintiff's complaint but also from the evidence, that at the time in question Henry Phillips was the agent of plaintiff.

■ It is further argued that equitable defenses are not available in an equity suit to anyone guilty of a breach of trust. This, of course, is the general rule but there are exceptions, one of which is found in the authority relied upon by plaintiff, which is:

"The existence of a confidential relationship between the parties is an important circumstance for consideration in determining whether a delay in seeking to enforce a right constitutes laches, a delay under such circumstances not being so strictly regarded as where the parties are strangers to each other. If an agent has taken advantage of the confidence reposed in him to obtain property of the principal or any other undue advantage over him, lapse of time will not ordinarily bar the principal's suit for relief, *unless the principal delays so long after the transaction as to raise a presumption that he has acquiesced in it and abandoned his claim, in which case relief will be denied.* * * *" 30 CJS 556, Equity, § 129. (Emphasis supplied.)

*Menendez v. Holt*, 128 US 514, 32 L ed 526, 9 Sup. Ct 143, the next case relied upon by plaintiff, likewise sustains the exception, full recognition being given to the general rule that estoppel will ordinarily not be a defense where a confidential relation exists, the exception being couched in the following language:

"* * * Mere delay or acquiescense cannot defeat the remedy by injunction in support of the legal right, unless it has been continued so long and under such circumstances as to defeat the right itself. * * *

"* * * * *

"* * * At the same time, as it is in the exercise of discretionary jurisdiction that the doctrine of reasonable diligence is applied, and those who seek equity must do it, a court might hesitate as to the measure of relief, where the use, by others, for a long period, under assumed permission of the owner, had largely enhanced the reputation of a particular brand."

We have examined with care the other authorities cited. In our opinion they lend no help to a proper solution of this matter.

When plaintiff, on being apprised of the lack of merit in the invention by the American Screw Company and its patent attorney, disavowed any interest in the same, it impliedly acquiesced in the transaction and abandoned its claim. It would indeed be inequitable and unjust to permit the plaintiff, with full knowledge of the facts, after approximately five years' silence and after defendants had brought the invention to a profitable fruition, to enrich itself at the expense of defendants.

The former opinion will be adhered to.

BRAND, J., dissents.