## MENENDEZ v. HOLT.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 77. Argued November 14, 1888. — Decided December 10, 1888.

A combination of words, made by a firm engaged in mercantile business, from a foreign language, in order to designate merchandise selected by them in the exercise of their best judgment as being of a certain standard and of uniformity of quality, may be protected to them and for their use as a trade-mark, and does not fall within the rule in *Manufacturing Co.* v. *Trainer*, 101 U. S. 51.

The addition of the infringer's name to a trade-mark in the place of the owner's does not render the unauthorized use of it any less an infringement.

When a partner retires from a firm, assenting to or acquiescing in the retention by the other partners of the old place of business and the future conduct of the business by them under the old name, the good-will remains with the latter as of course.

A trade-mark may be part of the good-will of a firm, and in this case it was part of the good-will of the appellee's firm.

A person who comes into an existing firm as a partner, and, after remaining there a few years, goes out, leaving the firm to carry on the old line of business under the same title in which it did business both before he came in and during the time he was a partner, does not take with him the right to use the trade-marks of the firm, in the absence of an agreement to that effect.

The intentional use of another's trade-mark is a fraud; and when the excuse is that the owner permitted such use,. that excuse is disposed. of by affirmative action to put a stop to it, and no estoppel arises.

THE case, as stated by the court, was as follows : —

Appellees, partners in business under the firm name of Holt & Company, filed their bill of complaint July 17, 1882, against appellants, engaged in business under the. firm name of José Menendez & Brother, alleging that they were dealers in and bought and sold flour and grain; that Robert S. Holt had theretofore been for more than twenty-five years at the head of the firm of Holt & Company, which firm had from time to time been changed or dissolved by the retirement of various members, but in each such instance a new firm had been immediately formed, and succeeded to the firm name, good-will, brands, trade-marks, and other assets of the preceding firm, so that there had been no interruption of. the name and business identity of Holt & Company for over twenty-five years, during which time said firm had had a high reputation in the trade; that complainants were now legally seized of the good-will and all the trade-marks ever at any time used by the firm ; that they were the owners of a certain trade-mark for flour, which consisted of the fanciful words "La Favorita," which was originated by the firm, and had been used by it for more than twenty years, to distinguish a certain flour of their selection and preparation ; that said firm at all times exercised great care in the selection, packing and preparation of the flour packed and sold by them under the said brand, "La Favorita," and had carefully advertised the same, and by their care and efforts extensively introduced it to the trade, so that the said brand had come to be widely known and sought after by the trade, and the sale of flour so branded constituted an important part of the firm's business; that the brand was applied by stencilling it on the barrels ; and that it had been duly registered by the firm in pursuance of law. Defendants were charged with having made use of the brand as a mark for flour of their own preparation or selection in violation of complainants' rights.

The answer admitted the existence of the trade-mark and that the defendants had used it, but denied that Holt & Co. were the owners, and averred that one Stephen O. Ryder was a member of Holt & Co. from 1861 to 1868, and had since used, and was entitled to use, said trade-mark as his own; that said Ryder put his own name on flour in connection with the name "La Favorita;" and that defendants had sold such flour as the special selection of said Ryder, and not as selected by complainants.

Evidence was adduced in relation to the connection of Ryder with the firm of Holt & Co., his retirement therefrom, and the ownership of the brand thereupon, to establish the use of the trade-mark by Ryder and others without protest on complainants' part; also, subject to objection, to show a prior use of the same as a trade-mark for flour.

It appeared that Holt & Co. deposited *fac-similes* of the trade-mark October 17th, 1881, in the Patent Office, and that it was duly registered February 28th, 1882.

The Circuit Court refused an accounting, but held complainants entitled to the exclusive use of the words as a brand or trade-mark for flour, and that the defendants had infringed the rights of complainants in the use of the words on flour not prepared by complainants, and decreed a perpetual injunction. From that decree this appeal was prosecuted.

*Mr. Arthur v. Briesen* for appellants.

I. Is the brand "La Favorita," as used by the complainants, a trade-mark? We respectfully submit that it is not. It clearly appears from the proofs that the complainants, who are merely dealers in flour and not manufacturers, employ a large number of brands, and have done so for years past, placing the same upon their different packages of flour as their fancy or judgment might indicate.

The proofs further show that it was the idea of the complainants to place the brand "La Favorita" upon a peculiar *quality* of flour, so that said brand did not in itself indicate ownership, but simply quality, and nothing but quality; the

term "Miranda," for instance, indicating another quality, or being at least intended so to do.

The certificate of registration filed in the Patent Office by complainants (and the proofs also support this certificate) was to the effect that the complainants used the term "La Favorita" in connection with the firm name of Holt & Company. The case, therefore, seems to be on all-fours with the decision of this court in *Manufacturing Co.* v. *Trainer*, 101 U. S. 51, which was followed in *Wilcox & Gibbs Sewing Machine Co.* v. *The Gibbens Frame*, 17 Fed. Rep. 623; and in *The Royal Baking Powder Co.* v. *Sherrell*, 93 N. Y. 331.

These decisions seem to dispose of the question under discussion. The term "La Favorita," which at best is descriptive in the same sense as "La Selecta," is admittedly used as a brand indicating a certain grade of flour; is admittedly used on flour not of complainants' manufacture. It indicates that it is the "favorite" brand of Holt & Company, while the other indicates that it is the "selected" brand of Holt & Company, the purchaser being intended to learn from these brands that each covers a certain grade of flour; the "Favorita" being *usually*, but not always, milled by stones.

We submit, therefore, that this court will find that the term "Favorita" being intended to indicate only *quality*, and not *origin* of manufacture, does not constitute a trade-mark in the sense in which the term trade-mark has by this and other high tribunals been heretofore defined.

II. Are the complainants the legal owners of the so-called brand "La Favorita"? Even assuming, for the sake of argument, that the brand "La Favorita" constitutes a valid trade-mark, it does not seem that the title alleged in the complaints has been made out.

III. But assuming that "La Favorita" is a good trade-mark and that the firm of Holt & Company, as constituted in 1861, first adopted it, have the present complainants title to the exclusive use of said names as a brand on flour superior to the title of R. S. Holt and S. O. Ryder? In 1861 Mr. Ryder was Mr. Holt's and Mr. Searle's partner, under an agreement which did not provide for the possession of the trade-marks at the time of dissolution.

That on the dissolution of a partnership, in the absence of any agreement to the contrary, all partners retain equal rights in the trade-marks. of the firm, see *Weston* v. *Ketcham,* 39 N. Y. Superior Ct. (7 Jones & Spencer) 54; *Young* v. *Jones,* 3 Hughes, 274; *Taylor* v. *Bothin,* 5 Sawyer, 584; *Huer* v. *Dannenhoffer,* 82 N. Y. 499; *Wright* v. *Simpson,* 15 Off. Gaz. 968.

IV. If the appellees own any trade-mark, what is that trade-mark? and has it been infringed by the appellants?

The defendants' answer states that the "La Favorita" flour they sold was always accompanied by the name of S. O. Ryder, plainly and prominently added to the brand.

Thus one concern sold flour branded, "La Favorita, Holt & Company," and the other concern sold flour branded, "La Favorita, S. O. Ryder." The name of the party selecting the flour, sold under these brands, was plainly stated by either party. If, therefore, the allegation of the answer respecting the use by the defendants of said brand be taken as a qualified admission in the case, this allegation shows that there was no infringement of the *real* brand used by the complainants. Beyond that there is no proof in the case at all of any infringement, because the testimony does not disclose where or when the firm of José Menendez & Bro. sold any "La Favorita" flour, or where or when the firm of A. V. Ryder sold any "La Favorita" flour. There was clearly, where the name of S. O. Ryder was added to the brand, no intention to palm off the goods of the defendants for those of the complainants; consequently no infringement of that which is of real value to the complainants, viz.: their firm name in connection with such other marks of grade or quality as they might choose to brand upon their barrels.

*The Amoskeag Manufacturing Company Cases* and *The Royal Baking Powder Case,* heretofore alluded to, seem to be controlling on this question.

V. In view of their laches, the appellees have no status in a court of equity. *McLean* v. *Fleming,* 96 U. S. 245; *Godden* v. *Kimmell,* 99 U. S. 201; *Landsdale* v. *Smith,* 106 U. S. 391; *Gleason* v. *District of Columbia,* 127 U. S. 133; *Richards*

v. *Mackall*, 124 U. S. 183; *Speidel* v. *Henrici*, 120 U. S. 377; *Graham* v. *Boston &c. Railroad Co.*, 118 U. S. 161; *Holgate* v. *Eaton*, 116 U. S. 33; *Wollensak* v. *Reiher*, 115 U. S. 96; *Piatt* v. *Vattier*, 9 Pet. 405; *Wagner* v. *Baird*, 7 How. 234; *Badger* v. *Badger*, 2 Wall. 87, 94; *McLaughlin* v. *People's Railway*, 21 Fed. Rep. 574; *Wyeth* v. *Stone*, 1 Story, 273; *Glenn* v. *Dorsheimer*, 24 Fed. Rep. 536.

We feel satisfied that, in the light of these numerous authorities, the question of laches as between the interest of private litigants is one proper to be raised by defendant, and will avail him if the charge is proven. *McLean* v. *Fleming* seems to mark the distinction that where the general public is interested as a third party, and where it appears that the public will be injured by the false representations of the defendant, the question of laches will be pertinent only so far as complainants' right to an accounting is concerned; the injunction being, however, granted, not because complainant is in an equitable position, but because the public, and the public only, has to be protected.

In the present case nothing appears to show that the public interests are at stake. The term "La Favorita" has been so thoroughly used in competition with the complainants by numerous manufacturers and dealers in flour, that the public has been educated — to say the least — to mark the distinction between goods of different dealers by noting their names on the packages. The term "La Favorita," without the name of the dealer, does not inform the public of the origin or ownership of the brand, and of the place where the goods are manufactured or put up. Hence, we believe the court below erred in allowing an injunction.

*Mr. Rowland Cox* for appellees.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

A reversal of the decree in this case is asked on the grounds that the words "La Favorita," as used by the complainants,

cannot be protected as a trade-mark; that there has been no infringement; that the words had been used as a brand before being used by Holt & Co.; that the title of Holt & Co. was not superior to that of S. O. Ryder; and that whatever rights complainants may once have had had been forfeited by laches.

The fact that Holt & Co. were not the actual manufacturers of the flour upon which they had for years placed the brand in question, does not deprive them of the right to be protected in the use of that brand as a trade-mark.

They used the words "La Favorita" to designate flour selected by them, in the exercise of their best judgment, as equal to a certain standard. The brand did not indicate by whom the flour was manufactured, but it did indicate the origin of its selection and classification. It was equivalent to the signature of Holt & Co. to a certificate that the flour was the genuine article which had been determined by them to possess a certain degree of excellence. It did not, of course, in itself, indicate quality, for it was merely a fancy name and in a foreign language, but it evidenced, that the skill, knowledge and judgment of Holt & Co. had been exercised in ascertaining that the particular flour so marked was possessed of a merit rendered definite by their examination and of a uniformity rendered certain by their selection. The case clearly does not fall within the rule announced in *Manufacturing Co.* v. *Trainer*, 101 U. S. 51, 55, that "letters or figures which, by the custom of traders, or the declaration of the manufacturer of the goods to which they are attached, are only used to denote quality, are incapable of exclusive appropriation, but are open to use by any one, like the adjectives of the language;" or in *Raggett* v. *Findlater*, L. R. 17 Eq. 29, where an injunction to restrain the use upon a trade label of the term "nourishing stout" was refused on the obvious ground that "nourishing" was a mere English word denoting quality. And the fact that flour so marked acquired an extensive sale, because the public had discovered that it might be relied on as of a uniformly meritorious quality, demonstrates that the brand deserves protection rather than

that it should be debarred therefrom, on the ground, as argued, of being indicative of quality only. *Burton* v. *Stratton*, 12 Fed. Rep. 696; *Godillot* v. *Harris*, 81 N. Y. 263; *Ransome* v. *Graham*, 51 L. J. (N. S.) Ch. 897.

Holt & Co., then, having acquired the exclusive right to the words "La Favorita," as applied to this particular vendible commodity, it is no answer to their action to say that there was no invasion of that right because the name of S. O. Ryder accompanied the brand upon flour sold by appellants, instead of the name of Holt & Co. That is an aggravation and not a justification, for it is openly trading in the name of another upon the reputation acquired by the device of the true proprietor. *Gillott* v. *Esterbrook*, 47 Barb. 455; *S. C.* 48 N. Y. 374; *Coats* v. *Holbrook*, 2 Sandf. Ch. 586.

These views dispose of two of the defences specifically urged on behalf of appellants, and we do not regard that of prior public use, even if it could be properly considered under the pleadings, as entitled to any greater weight. Evidence was given to the effect that from 1857 to 1860 the words "La Favorita" were occasionally used in St. Louis by Sears & Co., then manufacturing in that city, as designating a particular flour, but the witnesses were not able to testify that any had been on sale there under that brand (unless it were that of Holt & Co.) for upwards of twenty years. The use thus proven was so casual and such little importance apparently attached to it, that it is doubtful whether Sears & Co. could at any time have successfully claimed the words as a trade-mark, and at all events, such use was discontinued before Holt & Co. appropriated the words to identify their own flour, and there was no attempt to resume it.

It is argued, however, that the title of Holt & Co. to the use of the mark was not superior to that of S. O. Ryder, because it is said that Ryder, upon leaving the firm, took with him his share of the good-will of the business, and consequently of the trade-marks, and hence that the defendants below rightfully sold flour under the brand "La Favorita," when selected by Ryder and so marked by him.

Good-will was defined by Lord Eldon, in *Cruttwell* v. *Lye*,

17 Ves. 335, 346, to be "nothing more than the probability that the old customers will resort to the old place;" but Vice Chancellor Wood, in *Churton* v. *Douglas*, Johnson, V. C. 174, 188, says it would be taking too narrow a view of what is there laid down by Lord Eldon, to confine it to that, but that it must mean every positive advantage that has been acquired by the old firm in the progress of its business, whether connected with the premises in which the business was previously carried on, or with the name of the late firm, or with any other matter carrying with it the benefit of the business.

It may be that where a firm is dissolved and ceases to exist under the old name, each of the former partners would be allowed to obtain "his share" in the good-will, so far as that might consist in the use of trade-marks, by continuing such use in the absence of stipulation to the contrary; but when a partner retires from a firm, assenting to or acquiescing in the retention by the other partners of possession of the old place of business and the future conduct of the business by them under the old name, the good-will remains with the latter as of course.

Holt & Co. commenced business in 1845, and had had an uninterrupted existence under that name since 1855; the trade-mark in question was adopted by the senior member of the firm in 1861, and had been thereafter in continuous use; Ryder became a partner in 1861, and retired February 1, 1869, when a circular was issued, in which he participated, announcing the dissolution by his retirement,- the continuance of the business by the other partners under the same firm name, and the formation of another partnership by Ryder with one Rowland, to transact the flour and commission business at another place, under the name of Rowland & Ryder.

In addition to these facts it is established by the preponderance of evidence, that it was verbally agreed, at the time Ryder retired, that he surrendered all interest in the brands belonging to Holt & Co. Ryder attempts to deny this, but his denial is so qualified as to render it unreliable as against the direct and positive character of the evidence to the con-

trary.   Indeed, when asked why the brands were not made the subject of appraisement when he went out, as it was conceded all the other property of the firm was, he says that it was because he " gave up all right, title and interest to those valuable brands to Robert S. Holt out of friendship, so there was no occasion for it."   In our judgment, Ryder's claim to any interest in the good-will of the business of Holt & Co., including the firm's trade-marks, ended with his withdrawal from that firm.

Counsel in conclusion earnestly contends that whatever rights appellees may have had were lost by *laches;* and the desire is intimated that we should reconsider *McLean* v. *Fleming,* 96 U. S. 245, so far as it was therein stated that even though a complainant were guilty of such delay in seeking relief upon infringement as to preclude him from obtaining an account of gains and profits, yet, if he were otherwise so entitled, an injunction against future infringement might properly be awarded.   We see no reason to modify this general proposition, and we do not find in the facts as disclosed by the record before us anything to justify us in treating this case as an exception.

The intentional use of another's trade-mark is a fraud; and when the excuse is that the owner permitted such use, that excuse is disposed of by affirmative action to put a stop to it. Persistence then in the use is not innocent; and the wrong is a continuing one, demanding restraint by judicial interposition when properly invoked.   Mere delay or acquiescence cannot defeat the remedy by injunction in support of the legal right, unless it has been continued so long and under such circumstances as to defeat the right itself.   Hence, upon an application to stay waste, relief will not be refused on the ground that, as the defendant had been allowed to cut down half of the trees upon the complainant's land, he had acquired, by that negligence, the right to cut down the remainder, *Attorney General* v. *Eastlake,* 11 Hare, 205; nor will the issue of an injunction against the infringement of a trade-mark be denied on the ground that mere procrastination in seeking redress for depredations had deprived the true proprietor of his legal right. *Fullwood* v.

*Fullwood*, 9 Ch. D. 176. Acquiescence to avail must be such as to create a new right in the defendant. *Rodgers* v. *Nowill*, 3 De G., M. & G. 614. Where consent by the owner to the use of his trade-mark by another is to be inferred from his knowledge and silence merely, " it lasts no longer than the silence from which it springs; it is, in reality, no more than a revocable license." Duer, J., *Amoskeag Mfg. Co.* v. *Spear*, 2 Sandford (N. Y.) 599; *Julian* v. *Hoosier Drill Co.*, 78 Indiana, 408; *Taylor* v. *Carpenter*, 3 Story, 458; *S. C.* 2 Woodb. & Min. 1.

So far as the act complained of is completed, acquiescence may defeat the remedy on the principle applicable when action is taken on the strength of encouragement to do it, but so far as the act is in progress and lies in the future, the right to the intervention of equity is not generally lost by previous delay, in respect to which the elements of an estoppel could rarely arise. At the same time, as it is in the exercise of discretionary jurisdiction that the doctrine of reasonable diligence is applied, and those who seek equity must do it, a court might hesitate as to the measure of relief, where the use, by others, for a long period, under assumed permission of the owner, had largely enhanced the reputation of a particular brand.

But there is nothing here in the nature of an estoppel, nothing which renders it inequitable to arrest at this stage any further invasion of complainants' rights. There is no pretence of abandonment. That would require proof of non-user by the owner or general surrender of the use to the public. The evidence is positive that Holt & Co. continuously used the trade-mark, always asserted their exclusive right to it, and never admitted that of any other firm or person, and, in the instance of every party, including Ryder, who used this brand on flour not of Holt & Co.'s selection, that use, when it came to their knowledge, was objected to by the latter, and personal notice given, while publication was also made in the newspapers, circulating where the flour was usually marketed, containing a statement of Holt & Co.'s rights and warning against imitations. It is idle to talk of acquiescence in view of these facts. Delay in bringing suit there was, and such delay as to preclude recovery of damages for prior infringement, but there

was neither conduct nor negligence which could be held to destroy the right to prevention of further injury.

The decree of the Circuit Court will, therefore, be

*Affirmed.*