PFLUGH et al. v. EAGLE WHITE LEAD CO.

(Circuit Court of Appeals, Third Circuit. February 8, 1911.)

No. 48.

**1. TRADE-MARKS AND TRADE-NAMES (§ 1*)—GIST OF TRADE-MARK.**

The gist of a trade-mark is its association in the public mind with a product; it being the identifying mark of a trade.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 1; Dec. Dig. § 1.*]

**2. TRADE-MARKS AND TRADE-NAMES (SUBD. V*)—INFRINGEMENT—ADJUDICATION.**

Trade-marks, No. 60.062, registered January 29, 1907, for a pictorial eagle, and No. 60.993, registered February 26, 1907, for the word "Eagle," both being for pure white lead, are not infringed by defendant's use of the words "Gold Eagle," the competitive labels differing in form, color, and pose of eagle, especially since defendants' product is combination white lead, and their use of the eagle has been acquiesced in for several years.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. subd. V.*]

Appeal from the Circuit Court of the United States for the District of New Jersey.

Suits by the Eagle White Lead Company against Albert Pflugh and another, partners as Pflugh & Co. From a decree of the Circuit Court (180 Fed. 579), defendants appeal. Reversed.

Clifton V. Edwards (Julian S. Wooster, of counsel), for appellants.

Charles E. Riordon and W. H. Singleton, for appellee.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

185 F.—49

BUFFINGTON, Circuit Judge.   In the court below, the Eagle White Lead Company charged Pflugh & Co. with violations of its two trade-marks.   The court, in an opinion reported at 180 Fed. 579, sustained the two bills and ordered injunctions, but refused accountings; the two cases being treated in that court and this by stipulation as a single bill.   From a decree granting injunctions, Pflugh & Co. took this appeal.   After argument and due consideration, we are of opinion these injunctions cannot be sustained.   The first trade-mark in question is No. 60,062, for pure white lead, registered January 29, 1907, for a pictorial eagle shown in a drawing as follows:

In his statement the grantee averred:

"The trade-mark is displayed on the packages containing the goods by placing thereon a printed label on which the same is shown, or by printing, branding, or otherwise placing the trade-mark on the heads or sides of barrels or kegs containing the goods, or by displaying it in any manner desired."

The second trade-mark is No. 60,993, also for pure white lead, registered February 26, 1907, for the printed word shown in type as follows:

## *EAGLE*

In his statement the grantee used the same statement quoted above.

The word and the pictorial eagle were used in complainant's label, and the latter and respondent's alleged infringing label are attached.

The above, as used, appears in gold on blue background.

The above, as used, appears in black on white background.

There is no proof of any confusion of goods in the public mind by these labels. Obviously there could be none. One is round, the other angular; one is white, the other blue; one has black letters, the other gold; the pose of the eagles is different; one is printed in gold, emphasized by the name "Gold Eagle," and the other is printed in black; the white lead is described in the one as pure, in the other as a combination.

Now, the gist of a trade-mark is its association in the public mind with a product. As its name indicates, it is the identifying mark of that trade; in other words, the trade-mark. But no such facts exist in this case as to either the word, or the pictorial eagle. While the complainant has employed the word "eagle," not to describe or identify their goods, but as their firm name—the Eagle White Lead Company—and have used a pictorial eagle on their labels, yet the use of an eagle on white lead labels was common in that trade for years; the respondent itself going back to the early 90's. Indeed, the fact is clear that the eagle has never been exclusively associated in the public mind with the complainant's lead.

But the proofs go much further. They not only show such a use of the eagle by other lead makers, but they show that such use was with the knowledge of the complainant and was under a claim of right to so use, and that this state of facts has extended over a period of some 14 years before this suit was brought. Thus in 1893 the complainant found the respondent was using the label it now seeks to enjoin. In a letter of February 1st to respondents it called their attention to this brand and requested them to cease using it. The respondents promptly replied, averring their right to use the eagle on such brand, and called attention to several other leads on the market which used the word "eagle." To this claim of right by the respondents the complainant made no answer, and by its silence acquiesced in the respondents' use until 1901. On July 1st of that year the complainant again wrote to the respondents, calling attention to a circular of respondents stating, "We beg leave to call your attention to 'Our Celebrated Gold Eagle' white lead," and saying:

"The word 'Eagle,' describing our brand of white lead, is our property, protected under the laws of the United States. We cannot consent to its use by you or any other party, and we hereby notify you that, unless its use is discontinued at once, we shall be obliged to take such legal steps as will insure the protection of our rights."

It will be noted that the claim made in this letter is much broader than in that of 1893, where the complaint was the use of a label. Here it is to any use of the word "eagle" in connection with white lead. To this demand the respondents replied, again asserting their right to use the eagle in connection with white lead. By a further silence of 6 years the complainant acquiesced in this asserted right until 1907, when it filed this bill.

In view of these facts, of the asserted and exercised right of the respondents to use the eagle during this period of fourteen years, of the acquiescence of the complainant in that use, and of the further fact that the respondents' label is so different that by no possibility could it be mistaken for complainant's trade-mark (see opinion of Judge Hazel in Hutchinson v. Loewy, reported and affirmed in 163 Fed. 44, 90 C. C. A. 1, and cases cited), it is clear the complainant is not entitled to the relief prayed for. The simple fact is that the eagle is not the exclusive trade-mark of its white lead. It is equally the trade-mark of the respondents, and as the trade-mark of the respondents under adverse claim of right the latter have presumably during these 14 years gone on extending their trade under that brand. The continued, persistent, and adverse use of the eagle by the respondents and presumably by the other firms to which they called complainant's attention, during all these years, shows an abandonment of an exclusive claim by the complainant. And on such abandonment new rights have meanwhile arisen on the part of the public. The trade of the respondents has been continued and built up further upon their trade label, on which an eagle appeared.

We are not unmindful of Menendez v. Holt, 128 U. S. 524, 9 Sup. Ct. 143, 32 L. Ed. 526, and other cases cited in the opinion below, that mere failure to enforce trade-mark rights will not preclude injunctive relief when it is sought. But those were cases where, as

said in Menendez v. Holt, supra, there was nothing "in the nature of an estoppel, nothing which rendered it inequitable to arrest at this stage any further invasion of complainant's rights." In this case there is. The complainant notified the respondents of its alleged rights; the respondents positively asserted their adverse rights; the complainant acquiesced in the respondents building up their trade under their label for 8 years without further objection; then complainant notified again and again, but respondents stood their ground and continued for 6 years more to build up their adverse trade-mark rights before the complainant again broke its silence by asserting an exclusive right by filing this bill.

Under such facts it would, in our judgment, be inequitable to arrest at this stage the respondents' trade, and therefore the decree of the court below must be reversed, with costs.

The case of Carroll v. McIlvaine (C. C. A.) 183 Fed. 22, decided since the preparation of this opinion, is in line with the conclusion above stated.