## WHITE ROCK MINERAL SPRINGS CO. v. AKRON BEVERAGE & COLD STORAGE CO.

(Circuit Court of Appeals, Sixth Circuit. June 5, 1924.)

No. 3964.

Trade-marks and trade-names and unfair competition ⬤⟹64—Continued use of trade-mark for beer on near beer held within right of user.

Complainant has used for many years and had registered the name "White Rock" as a trade-mark for mineral water and ginger ale. Defendant had used for 15 years and had registered the name "White Rock" as a trade-mark for beer, malt extract, and liquors, and after prohibition continued to use the trade-mark for its product, near beer, which is made by the same process as its beer, except that, after manufacture, the greater part of the alcoholic content is evaporated out. *Held*, that such continued use was within its established right, acquiesced in by complainant, and could not be enjoined by complainant, because the new product came into competition with its own as a "soft drink."

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit in equity by the White Rock Mineral Springs Company against the Akron Beverage & Cold Storage Company. Decree for defendant, and complainant appeals. Affirmed.

A. J. Hudson, of Cleveland, Ohio (Thurston, Kwis & Hudson, of Cleveland, Ohio, and Oudin, Kilbreth & Schackno, of New York City, on the brief), for appellant.

Floyd E. Shannon, of Akron, Ohio, for appellee.

Before DENISON, MACK, and DONAHUE, Circuit Judges.

MACK, Circuit Judge. This is an appeal from a decree dismissing a bill alleging infringement of plaintiff's trade-mark "White Rock" and unfair competition in connection therewith. The stipulated facts on which the case was tried are thus summarized by the District Court:

"Plaintiff, in 1883, began to bottle, sell, and ship in interstate commerce mineral water from a natural spring located at Waukesha, Wis. It has continuously, since 1887, applied thereto the trade-mark 'White Rock.' Since 1893 the labels and other dress of plaintiff's goods have had printed thereon the legend 'White Rock,' with a picture showing a woman kneeling upon a rock, looking into the water below. On November 28, 1893, the legend 'White Rock,' with the accompanying picture, was registered as a trade-mark appropriated by plaintiff for mineral beverages made of water. In the certificate of registration it is further said the particular description of the goods comprised in such class is natural and artificial mineral water, ginger ale, phosphate, ozonate, and carbonated beverages. In 1893 a neck label with the legend 'White Rock' printed thereon in large letters was also adopted and has since been continuously used. On August 22, 1905, this label was also registered as a trade-mark applied to beverages, particularly mineral waters. In 1893 plaintiff also began to bottle, sell, and ship, and has ever since sold and shipped, a beverage caller 'ginger ale,' to which these same trade-marks have been applied. On April 24, 1906, this trade-mark was also registered, and in the certificate of registration it is said the particular description of goods comprised in the class on which it is used is ginger ale.

In the intervening period, plaintiff did not make, ship, or sell, nor apply these trade-marks to any other beverages, but beginning in May, 1920, and continuously since, it has made, sold, and shipped under these trade-marks beverages known as 'sarsaparilla' and 'root beer.' Plaintiff's products, particularly its mineral water, had become and are nationally known and widely sold and used. Large sums have been expended in advertising these products under these trade-marks and labels. In the last five years these expenditures have aggregated $508,702.31. In the past five years it has shipped and sold 837,442 cases, each case containing 100 pints, or 100 splits.

"Defendant is doing business at Akron, Ohio. It began business in January, 1904, manufacturing and selling lager beer. In January, 1904, it also adopted and applied to its beer the trade-mark 'White Rock,' which was continuously used on lager beer until the adoption of state and national prohibition. It does not and has never used the picture, but does use a label and neckpiece, both containing the legend 'White Rock,' of a form and appearance substantially similar to plaintiff's. On March 17, 1913, defendant made application to register the trade-mark 'White Rock' as appropriated to beer, malt extracts, and liquors. Plaintiff filed notice of opposition, and upon hearing both the Examiner, and on appeal the Commissioner of Patents, held that plaintiff's and defendant's trade-marks were not applied to merchandise of the same descriptive properties, and accordingly registration was allowed of defendant's trade-mark as applied to beer, malt extracts, and liquor. No appeal from this decision was taken to the Court of Appeals of the District of Columbia. Defendant did not use its trade-mark or labels on any product other than beer until after the advent of prohibition. It has since applied the same to what it calls a cereal beverage containing less than one-half of 1 per cent. of alcohol and popularly known as 'near beer.' It is this use as applied to near beer that plaintiff asserts is an infringement of its trade-mark, and unfair competition.

"Plaintiff's ginger ale, root beer, and sarsaparilla are produced by adding an extract in syrup form to water. Defendant's product is manufactured from grain by the standard brewing process, such as is used in making beer, and by eliminating by evaporation from the beer after it is made, all alcohol in excess of one-half of 1 per cent. Both parties, it is stipulated, sell their product to retail dealers, cafés, hotels, and places of like nature where so-called soft drinks and similar beverages are sold at retail to the consuming public. No proof is offered that any confusion of goods has in fact arisen. No expert evidence has been offered bearing on the question whether the different beverages have the same characteristic properties or can or may be sold indiscriminately to purchasers desiring a soft drink."

There is no evidence in the record that in 1904, when defendant adopted this trade-mark for its beer, it had any knowledge of plaintiff's use of "White Rock" as a trade-mark for its mineral water or ginger ale, save such knowledge as may be imputed to it by reason of the plaintiff's registration of this mark in 1893 for natural and artificial mineral water, ginger ale, phosphate, ozonate, and carbonated beverages. Defendant continued, unmolested, to manufacture beer under the trade-mark "White Rock" for many years thereafter, and in 1913 its registration thereof for beer, malt extracts, and liquor was sustained by the Commissioner, as against the plaintiff. Plaintiff, failing to appeal or to litigate anew, thus acquiesced in this uninterrupted use of the mark for defendant's beer until prohibition became effective, when defendant began to employ the trade-mark on a cereal beverage popularly known and sold as near beer, and produced exactly like its beer, except that all alcohol in excess of one-half of 1 per cent. is eliminated by evaporation after the beer is brewed.

While the mere failure of the plaintiff to appeal from the decision of the Commissioner of Patents in 1913 may not make the matter res

adjudicata (Atkins v. Moore, 212 U. S. 285, 29 Sup. Ct. 390, 53 L. Ed. 515), there can be no doubt that the plaintiff, because of acquiescence and laches, could not have questioned defendant's right to continue the use of the trade-mark on its beer just before the prohibition era. Plaintiff contends, however, that this right is limited to beer, an alcoholic beverage, and does not extend to "cereal beverage," a soft drink, which, it alleges, is sold in competition with its ginger ale, sarsaparilla, and root beer.

In view of the stipulated facts, it is unnecessary to determine whether or not, but for such acquiescence and laches, plaintiff could rightfully have enjoined the use of its trade-mark for beer, and for its continued or original use after prohibition for cereal beverage as products of similar descriptive properties to those covered by its registrations and therefore within its potential rights. Budweiser Malt Products Corporation v. Anheuser-Busch Inc. (D. C. N. Y.) 287 Fed. 243; cf. Pabst Brewing Co. v. Decatur Brewing Co. (C. C. A. 7) 284 Fed. 110; Aunt Jemima Mills Co. v. Rigney (C. C. A. 2) 247 Fed. 407, 159 C. C. A. 461, L. R. A. 1918C, 1039. See, too, Florence Mfg. Co. v. J. C. Dowd Co. (C. C. A. 2) 178 Fed. 73, 101 C. C. A. 565; Akron-Overland Tire Co. v. Willys Overland Co. (C. C. A. 3) 273 Fed. 674; Calif. Pkg. Co. v. Price-Booker Mfg. Co., 285 Fed. 993, 52 App. D. C. 259.

The important and distinguishing circumstances in the instant case, as the District Judge pointed out, are that defendant had acquired an unquestioned right to the use of the trade-mark "White Rock" on its beer, and that it merely continued this 15 years' use on a product identical with its beer, both in the process of manufacture and in the finished product, except only that as to the latter all but a small permitted fraction of the alcoholic content was removed before the finished product was marketed as cereal beverage. If the cereal beverage, because of its low alcoholic content, now comes into competition with those products as to which plaintiff has a superior or exclusive right, the situation is entirely unlike that of a newcomer in the field, who knowingly appropriates the mark of another to secure for himself that other's good will. Such competition cannot, under the circumstances, be deemed unfair merely because of the use of the name "White Rock." No proof was offered that, by reason of the similarity of labels or otherwise, any confusion has in fact arisen. Indeed, while "White Rock" is clearly emphasized on defendant's as on plaintiff's labels, and "cereal beverage" minimized in the typography, and while "White Rock" alone appears on the neck labels, defendant in these particulars has but continued its earlier practice in respect to its beer labels. Any confusion with plaintiff's products that may heretofore have arisen when defendant marketed beer may possibly be accentuated now that the defendant is manufacturing near beer, a soft drink. But such confusion, if any, whether now beginning or accentuated, cannot operate, in the absence of unfair competition, to deprive defendant of the use of the mark and of the good will built up over a period of years, even though it lessen the value of plaintiff's mark. Cf. Theodore Rectanus v. United Drug Co. (C. C. A. 6) 226 Fed.

545, 141 C. C. A. 301, affirmed in United Drug Co. v. Rectanus Co., 248 U. S. 90, 103, 39 Sup. Ct. 48, 63 L. Ed. 141; Hanover Mill Co. v. Metcalf, 240 U. S. 403, 36 Sup. Ct. 357, 60 L. Ed. 713.

Decree affirmed.