### H. A. METZ LABORATORIES, Inc., v. AMERICAN PHARMACEUTICAL CO., Inc.

District Court, S. D. New York.
Nov. 20, 1936.

Rogers, Ramsay & Hoge, of New York City (Edward S. Rogers, of New York City, of counsel), for plaintiff.

Schwartz & Frohlich, of New York City (Louis D. Frohlich, Herman Finkelstein, and Arnold Bernstein, all of New York City, of counsel), for defendant.

PATTERSON, District Judge.

The plaintiff in 1934 brought .suit for unfair competition, with jurisdiction resting on diversity of citizenship.

At the trial it was shown that the plaintiff manufactures the drug amidopyrine, a remedy for headaches and other ailments, and sells it under the trade-mark "Pyramidon." Pyramidon is the plaintiff's brand of amidopyrine. The drug is made in tablet form and is packed in tubes, bottles, and cartons bearing a pink label with the word "Pyramidon" in script form. The product has been sold in such containers for more than thirty years. Large sums of money have been spent in advertising Pyramidon to the medical profession and to the drug trade, and a large business has been built up.

The defendant is a "one-man company," owned and managed by one Kachurin. It manufactures and sells a large number of drug products. It appears that in 1928 the plaintiff brought suit in this court against Kachurin for infringement of the registered trade-mark "Pyramidon." In its bill against Kachurin the plaintiff alleged that it sold the drug under the name "Pyramidon" and under a distinctively pink label, and that Kachurin had lately put on the market a product under the same name and with label in the same color, in imitation of the plaintiff's article. The prayer was for an injunction restraining Kachurin from using the word "Pyramidon" and from using a package like the one then being used "or any other package that by colorable imitation or otherwise is calculated to induce the belief" that his product was the plaintiff's product. In 1930, while the case against Kachurin was undecided, the parties arrived at a settlement. The plaintiff paid Kachurin $37,500, and it was agreed that a consent decree "in accordance with the prayer of the bill" be entered. The settlement also dealt with certain other controversies not involved here. On the following day, July 15, 1930, a consent decree was entered, enjoining Kachurin from using the word "Pyramidon" and from using a package like that shown in the bill "or any other package which by colorable imitation or otherwise is calculated to induce the belief that any product other than the plaintiff's is the plaintiff's product." By stipulation in the Kachurin case the decree was binding on the present defendant as well as on Kachurin.

Kachurin and the present defendant (the two are interchangeable for practical purposes) then dropped the name "Pyramidon.' They adopted a label of the same pink color, with the name "amidopyrine" in script form like the word "Pyramidon" on the plaintiff's label, and put the label on a tube of the same shape and size as the plaintiff's tube. The tubes are small, two inches or so in length and one-half inch in diameter. In container and in label the article was as near the plaintiff's product as they could make it without employing the name "Pyramidon." This product was put on the market in the latter part of 1930 or in 1931, in competition with the plaintiff's Pyramidon. Kachurin testified that he submitted the new label to the plaintiff and won approval of it. I find Kachurin's testimony untrue on this point, as on many other points. The plaintiff did not consent to use of the new label. The plaintiff became aware in 1931 that Kachurin was using the label. With a fair degree of promptness, in January, 1932, it protested against the label as a deceptive imitation of the plaintiff's. Kachurin's denial that he received any protest is incredible. Investigators hired by the plaintiff in 1934 visited some 200 drug stores and asked for Pyramidon. In more than half the stores they were handed the defend-

ant's product. This suit was brought in April, 1934, the plaintiff having been engaged in the interval in pursuing a number of other manufacturers and dealers. A preliminary injunction was granted by Judge Knox.

The defendant deliberately copied the color and general appearance of the plaintiff's label. The purpose was to have an article so similar to the plaintiff's in style that unscrupulous retailers might work it off on unsuspicious purchasers as the plaintiff's. The deceptive purpose is evident from several things. One is an inspection of the two labels, taken with the substantial identity of the small tubes. Another, more striking, is the actual experience of purchasers already referred to. Another is the testimony of an experienced druggist that, if a customer is handed an article of the size and color of the article demanded, he frequently takes it without reading the label. Still another is the fact that, although the defendant's general color scheme for its products is brown and yellow, it went out of its way to choose pink for this particular product. The defendant could furnish no plausible reason for selecting the pink label. Reputable distributors of amidopyrine, on the other hand, did not copy the pink color. Passing notice may also be taken of the fact that the defendant has been found guilty of unfair competition in some six cases in the past three years. In the words of Martin, P. J., unfair competition is its "general course of conduct." Martin H. Smith Co. v. American Pharmaceutical Co., 244 App.Div. 702, 703, 278 N.Y.S. 834, 836.

■ The defendant says that the contract made in settlement of the old suit gave it the right to use the pink label. There is no substance in the argument. That contract, on the contrary, provided that the plaintiff should have the relief prayed for in the bill against Kachurin, and the relief prayed for in that bill included an injunction against use of any package that imitated the plaintiff's to a deceptive extent. The consent decree carried such an injunction, precisely as agreed to in the contract of settlement. The label now complained of was therefore not merely a tortious infringement of the plaintiff's right to protection against unfair competition; it was also an infringement of the plaintiff's contractual right.

■ The plaintiff is entitled to an injunction and an accounting. It is true that an accounting of profits does not automatically accompany an injunction. In cases where the plaintiff has been aware of the infringement and yet has made no protest for a long time, there will be an injunction but not an accounting. McLean v. Fleming, 96 U.S. 245, 24 L.Ed. 828; Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526. But here the plaintiff made protest not long after it first became aware of the presence of the defendant's new label in the market. There is nothing to indicate acquiescence by the plaintiff, nothing to show that the defendant's use of the label was with the belief that its conduct was not objectionable. There will be a decree for injunction and accounting, with costs.