## AMBROSIA CHOCOLATE CO. v. AMBROSIA CAKE BAKERY, Inc.

No. 5686.

Circuit Court of Appeals, Fourth Circuit.

Dec. 31, 1947.

Ira Milton Jones of Milwaukee, Wis., and Thornton H. Brooks, of Greensboro, N. C., (Brooks, McLendon, Brim & Holderness, of Greensboro, N. C., on the brief) for appellant.

William S. Pritchard, of Birmingham, Ala. (Winston B. McCall, of Birmingham,

694

Ala., and D. Edward Hudgins, of Greensboro, N. C., on the brief), for appellee.

Before PARKER and DOBIE, Circuit Judges, and CHESNUT, District Judge.

DOBIE, Circuit Judge.

Ambrosia Chocolate Company, a Wisconsin corporation, brought a civil action in the United States District Court for the Middle District of North Carolina against Ambrosia Cake Bakery, Inc., a North Carolina corporation, in which plaintiff sought to enjoin defendant from infringing plaintiff's registered trade-mark "Ambrosia". Plaintiff has appealed to us from a judgment of the District Court dismissing the complaint.

Plaintiff first registered "Ambrosia" in the United States Patent Office, April 2, 1907, as its trade-mark for Cocoa, Chocolate, Chocolate Candy, in Class 47, Confectionery; it further registered "Ambrosia" July 14, 1931, for Candy, Chocolate, Cocoa, Chocolate Coatings, Hot Chocolate Powder, in Class 46, Foods and Ingredients of Foods; finally, on July 30, 1940, there was a third registration for Sweet and Bitter, Solid and Powdered Chocolate and Cocoa Preparations for Food Beverages, Chocolate, Cocoa, and Candy, in Class 46, Foods and Ingredients of Foods.

While defendant is a North Carolina corporation, it is closely associated in stock ownership and executive management with Ambrosia Cake Company, an Alabama corporation, and Ambrosia Cake Bakeries Corporation, a Florida corporation. It was agreed by defendant here that all three of these corporations should be parties to this case and bound by the judgment herein. Defendant and its affiliates had registered "Ambrosia" as its trade-mark for cakes in 14 states, most of which were in the Southeastern part of the United States.

The business of defendant consists solely in the baking of cakes and the sale of these to bakeries which distribute them along with bread to merchants. These cakes are highly perishable and become stale and unfit for food after about two days; in price they range from 5 cents to 39 cents; plaintiff has never produced, nor is there any evidence that it intends to produce, cakes. Candy constitutes about 10% of plaintiff's sales; its other products are bulk cocoa or chocolate suitable for use in baking, coatings for ice cream and cakes, and for use in beverages. These products of plaintiff are not classified as perishable goods.

Between the years 1901 and 1919, plaintiff's business in North Carolina was utterly negligible. Only one sale, amounting to $25.50, was made. In the years just before this action was instituted (1946), its business in North Carolina materially grew in volume. In 1945, these sales amounted to $44,277.00; but of this sizeable volume of business only one sale, amounting to $65.00, was of candy.

We think the judgment of the District Court should be affirmed on the ground of laches, acquiescence and estoppel, even if there were no other ground for affirmance. In 1938 (more than 8 years before the instant action was filed) a representative of plaintiff called on defendant's president in Florida. This representative disclosed familiarity with operations of the three Ambrosia Cake Companies, commented on the similarity of the names of plaintiff and defendant and tried to sell to defendant's president certain of plaintiff's materials which were *to be used in making Ambrosia cakes to be sold under that name*. Shortly thereafter came a letter from plaintiff, signed by its vice-president. This letter was addressed to defendant by its corporate name but was sent to E. P. Colby, President, in Jacksonville, Florida.

This letter evinced interest in the previous call by plaintiff's representative on President Colby, expressed regret that some of plaintiff's materials used by defendant in making Ambrosia cakes had not proved satisfactory and indicated a desire to sell to defendant more of plaintiff's materials, again to be *used in making Ambrosia cakes* to be marketed under that name. The following sentence is found in the first paragraph of the letter: "That fact that the name 'Ambrosia' of your company was the same as ours increased our interest, you may be sure." This friendly epistle closed with a formula for devil's cake, one ingredient of which was produced by plaintiff, and the hope was implied that this devil's cake would be exploited by defendant.

■ We must conclude that the District Court correctly decided that here was adequate basis for an absolute defense on the ground of laches and acquiescence by plaintiff, amounting to estoppel. During the years intervening between 1938 (the year the above transactions occurred) and 1946 (when the instant civil action was instituted) defendant and its affiliates, by extensive advertising of the name "Ambrosia" for its cakes and by capable management and salesmanship, built up a large and lucrative cake business; therefore plaintiff is now estopped from destroying that business by an injunction which would forbid the use of the name "Ambrosia" for the cakes of defendant and its affiliates.

The view we have just expressed finds ample support in the cases. French Republic v. Saratoga Vichy Spring Co., 191 U.S. 427, 24 S.Ct. 145, 48 L.Ed. 247; Saxlehner v. Nielsen, 179 U.S. 43, 21 S.Ct. 16, 45 L.Ed. 77; Dwinell-Wright Co. v. White House Milk Co., 2 Cir. 132 F.2d 822; White Rock Mineral Springs Co. v. Akron Beverage & Cold Storage Co., 6 Cir., 299 F. 775.

Counsel for plaintiff attempt (we think with little success) to make much of the cases of Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526; and Aunt Jemima Mills Co. v. Rigney & Co., 2 Cir., 247 F. 407, L.R.A. 1918C, 1039. The utter inapplicability to the instant case of Chief Justice Fuller's opinion in the Menendez case is aptly shown by Circuit Judge Buffington in Pflugh v. Eagle White Lead Co., 3 Cir., 185 F. 769, 772, certiorari denied 220 U.S. 615, 31 S.Ct. 719, 55 L.Ed. 610:

"We are not unmindful of Menendez v. Holt, 128 U.S. [514,] 524, 9 S.Ct. 143, 32 L.Ed. 526, and other cases cited in the opinion below, that mere failure to enforce trade-mark rights will not preclude injunctive relief when it is sought. But those were cases where, as said in Menendez v. Holt, supra, there was nothing 'in the nature of an estoppel, nothing which rendered it inequitable to arrest at this stage any further invasion of complainant's rights.' In this case there is. The complainant notified the respondents of its alleged rights; the respondents positively asserted their adverse rights; the complainant acquiesced in the respondents building up their trade under their label for 8 years without further objection; then complainant notified again and again, but respondents stood their ground and continued for 6 years more to build up their adverse trade-mark rights before the complainant again broke its silence by asserting an exclusive right by filing this bill.

"Under such facts it would, in our judgment, be inequitable to arrest at this stage the respondents' trade, and therefore the decree of the court below must be reversed, with costs."

In the instant case, there was much more than the mere acquiescence and silence of the Pflugh case; there was active encouragement and commercial urging by plaintiff to induce defendant to make and vend its cakes under the name "Ambrosia".

In the Aunt Jemima case, supra, plaintiff had adopted this trade-mark for flour. Before defendant filed its application for registration of its trade-mark for syrup and sugar cream, it wrote to plaintiff, informing plaintiff of its intention. Whereupon plaintiff, in reply to defendant's letter, stated that plaintiff presumed that defendant could use the name of "Aunt Jemima" for syrup without violating any law. Said Circuit Judge Ward, 247 F. at pages 408, 409, L.R.A. 1918C, 1039: "The above letter is obviously no evidence of abandonment or of nonuser by the complainant, but the defendants say it is an acquiescence in their use of the trade-mark for syrups. We do not so construe it. The complainant was speaking of a matter of law, and said it 'presumed' that the defendants could do so without violating any law. But if, as matter of law, the defendants had no right to use the trade-mark, this expression of opinion by the complainant does not make the law other than it is, nor estop it from relying on the law as it really is."

The court concluded, too, 247 F. at page 410, L.R.A. 1918C, 1039: "Obviously the public, or a large part of it, seeing this trade-mark on a syrup, would conclude that it was made by the complainant."

It is clear there was no such confusion in the instant case. Again, in the Aunt

Jemima case, there was no active encouragement to defendant to use the trademark in question.

We now advert briefly to certain other factors which properly prompted the District Judge to deny an injunction in the present case.

We must approve the District Judge's Finding of Fact No. 18: "The defendant and its affiliated corporations transact and conduct their business in the bakery field and the plaintiff transacts and conducts its business in the wholesale grocery and confectionery field. These two fields, although related and kindred in some broad and general respects, are actually separate and distinct fields of commercial enterprise and are regarded in practice as being separate and distinct fields. The bakery and confectionery fields have separate trade organizations and associations, separate trade journals and publications and generally there is little or no active association between the two fields." See Arrow Distilleries, Inc. v. Globe Brewing Co., 4 Cir., 117 F.2d 347.

There was not a scintilla of evidence to show any confusion by the public as to the products of plaintiff and defendant or any misapprehension as to the origin of defendant's bakery products. Nor was plaintiff in any way injured or hurt by defendant's use of "Ambrosia" on its cakes. This was conclusively shown by the following testimony of Gretchen Schoenleber, President of plaintiff:

"Q. Did the plaintiff corporation at any time prior to the bringing of this suit have any complaint from anyone of any confusion as to the point of origin of the goods produced and manufactured by Plaintiff and point of origin of the goods produced and manufactured by the defendant? A. No.

"Q. As a matter of fact, the plaintiff corporation never came in contact in any of its business in North Carolina, in competition or otherwise, with the goods of the defendant prior to bringing this suit? A. No."

It was also clearly established by the evidence in this case that, in the territory in which defendant and its affiliates operate, "Ambrosia" means the cakes of defendant, not the products of plaintiff.

Plaintiff's trade-mark "Ambrosia", unlike "Kodak" or "Aunt Jemima", is not a distinctive, unique, fanciful, arbitrary word. "Ambrosia" is a common word denoting primarily the food of the mythical Greek and Roman gods; it also connotes any delicious food product, anything figuratively contributing to life or enjoyment, and specifically it denotes a food made of sliced oranges and shredded cocoanut. It is as true of "Ambrosia" as it is of "Arrow", what Circuit Judge Soper (speaking for our court) said in the Arrow Distilleries case, 117 F.2d 347, at page 351: "We think it (Arrow) belongs to the class of trade-marks whose exclusive field is closely restricted. The inferences, to which the name naturally gives rise, have encouraged so wide a use and so frequent a registration for many different articles that there is little danger that its mere use, even in the closely related fields of beers and cordials, will indicate a common origin or endanger the reputation of the plaintiff's goods."

And, as Circuit Judge Hough stated in France Milling Co. v. Washburn-Crosby Co., 2 Cir., 7 F.2d 304, at page 306: "The phrase 'Gold Medal' is distinctly not in the same class of original, arbitrary, or fanciful words as 'Kodak' and 'Aunt Jemima'. It is a laudatory phrase, suggestive of merit, recognized by some oganization of authority awarding a prize. It is only allied to some particular business or person by insistent, persistent advertising. Washburn's flour has been so advertised, and the proof is ample that publicity efforts have borne fruit, so that Gold Medal flour means among purchasers Washburn's flour. Yet it must always be remembered that there is nothing original about the name per se; it is exactly like the phrase 'Blue Ribbon,' and has been as extensively and variously applied. One who devises a new, strange, 'catching' word to describe his wares may and often has by timely suit prevented others from taking his word or set of words to gild the repute of even wholly different goods (cases supra); but one who takes a phrase which is the commonplace of self-praise like 'Blue Ribbon'

or 'Gold Medal' must be content with that special field which he labels with so undistinctive a name."

The word "Ambrosia" is in common use as a trade-mark and plaintiff was not even the first to register it as a trade-mark for food products. The records of the United States Patent Office disclose that the word has, for various articles, been registered more than a dozen times. We need not here comment upon defendant's lack of wisdom in choosing "Ambrosia" as a name for its cakes, when it either knew, or should have known, that this word had been frequently registered as a trade-mark in the United States Patent Office.

In some senses, a registered trade-mark is a property right, entitled, under proper circumstances, to protection at the hands of the courts. By no means, though, is this right of judicial protection unqualified or unrestricted. And the property right in a trade-mark possesses neither the dignity nor the importance of a patent. Only upon a clear showing of novelty and originality approximating a "flash of genius" is a patent granted; while a man of ordinary intelligence could easily devise a score of valid trade-marks in a short period of time. In many senses, too, a trade-mark is closely bound up with the good will of the business in which it is used. As Circuit Judge Buffington said, in Pflugh v. White Eagle Lead Co., 3 Cir., 185 F. 769, at page 771: "Now, the gist of a trade-mark is its association in the public mind with a product. As its name indicates, it is the identifying mark of that trade; in other words, the trade-mark."

There are other points raised in this case by the plaintiff-appellant, which we do not deem it necessary to consider or discuss.

We are convinced, as was the District Judge, that the plaintiff's case is utterly lacking in the broad aspects of equity. Accordingly, we are unwilling to lend our aid, on purely technical grounds, to the issuance of the equitable remedy of injunction when this, as we see it, would bring about a manifest commercial injustice.

In Ambrosia Chocolate Company v. Ambrosia Chocolate Cream Company (District Court of the United States, Northern District of Illinois, April 27, 1934) Judge Barnes dismissed this same plaintff's bill of complaint for want of equity, upon a set of facts quite similar to the facts involved in the instant case.

The judgment of the District Court is affirmed.

Affirmed.