**MEAD JOHNSON & COMPANY,**
Appellant,

v.

**BABY'S FORMULA SERVICE, INC.,**
et al., Appellees.

No. 25241.

United States Court of Appeals
Fifth Circuit.

Oct. 10, 1968.

See also 5 Cir., 402 F.2d 23.

Thomas McE. Johnston, Miami, Fla., Richard E. Alexander, Alexander & Speckman, Henry C. Krasnow, Chicago, Ill., John T. Lanahan, Evansville, Ind., for appellant.

Robert C. Lane, Stanley L. Lester, Lester, Oppenheimer & Gorman, Miami, Fla., for appellees.

Before TUTTLE, COLEMAN and MORGAN, Circuit Judges.

TUTTLE, Circuit Judge:

This case presents the unusual situation of the successful plaintiff in the trial court appealing here because it did not receive all the relief to which it felt entitled. It is a trademark infringement case which resulted in a finding by the trial court of infringement by the appellee Baby's Formula Service, Inc., of Mead-Johnson's trademark ENFAMIL, and in which the court enjoined further infringement but dismissed all proceedings against the individual defendants, officers or employees of the company, and denied all accounting for damages resulting from the infringement.

The facts are substantially undisputed. In any event the record fully substantiates the trial court's findings relative to the statement of facts which we will recite here.

Appellee corporation, Baby's Formula Service, Inc., was a small closely held corporation. The individual appellees, James and Stuart Gorman, and Rosalind Gorman Stone (former wife of Stuart), were stockholders and officers of the corporation. Appellee Anthony Damanda was the general manager of the corporation but he had no ownership interests.

Initially, Baby's Formula engaged in the business of supplying baby formulas to hospitals and homes. The formulas were prepared from a number of different ingredients, including one with the trademark ENFAMIL. This product was sold to the appellee by the trademark holders, Mead-Johnson, Inc. through distributors. Baby's Formula would dilute concentrated Enfamil according to a prescription and then deliver the prepared formula in containers to its hospital or home customers. The containers indicated the source as Baby's Formula Service, Inc., and Enfamil as an ingredient. Enfamil was not stressed on these labels and the use of the trademark was proper. The trademark Enfamil has been in use since 1959 by Mead-Johnson to designate the ready-to-use and concentrated forms of this baby formula. The concentrated form used by Baby's Formula and the ready-to-use form came in a number of different containers and have differing refrigeration qualities.

Mead-Johnson has expended large sums of money on a nation-wide advertising campaign to promote the use by doctors, hospitals, druggists and others of Enfamil.

In 1964, Baby's Formula developed a non-refrigerated ready-to-use baby formula product which it began to sell to hospitals. About the end of May or the beginning of June, 1966, this product, which contained Enfamil, was sold by Baby's Formula through retail outlets, primarily grocery stores. This marketing occurred primarily in Dade County, Florida, but there were plans, some already in effect, to expand this marketing nationally. The district court characterized this latter conduct as involving a change in Baby Formula's operations from a "service operation to one involving 'sales at retail.' "

Mead-Johnson already marketed a product prepared with Enfamil, "Nursette" which was in direct competition with Baby's Formula's new product.

Mead-Johnson became aware of their new competition in May, 1966. Two Mead-Johnson representatives visited with Mr. Damanda and Mrs. Gorman to discuss accounting procedures which would insure that Baby's Formula did not use any of the Enfamil for which Mead-Johnson paid it rebates in Baby's Formula retail business, as the rebate applied only on items sold by Baby's Formula to hospitals. As the district court found, Mead-Johnson until this time was aware of the appellee's use of its product, Enfamil, and actively and through a number of devices encouraged this use.

It is at this juncture, however, that the difficulty begins. Mead-Johnson does not dispute the fact that until the retail operations began, the appellee's use of the trademark product, Enfamil, was proper. The containers sold by Baby's Formula indicated that Enfamil was the main ingredient and that it had been reconstituted into its present form by Baby's Formula Service, Inc. Furthermore, the lettering on the labels would not confuse the buyer as to the source of the product or its nature. But the packaging of the reconstituted Enfamil for retail sale by the appellee was another matter. The district court found that the labeling used by the appellee was likely to cause confusion and deception of the purchasing public. The packaging and labeling emphasized the word "Enfamil" and did not indicate that the product was manufactured and prepared by Baby's Formula. A substantial part of the appellee's sales program success appeared to the district court to have resulted from their trading upon the reputation established for Enfamil by Mead-Johnson. The district court held that consumers would be led to believe from the manner of Baby's Formula Service, Inc.'s use of the trademark that the source of the Enfamil formula was Mead-Johnson and was vouched for and guaranteed by them.

The district court, however, did not state in its finding of fact exactly what packaging or labeling constituted the improper use of Mead-Johnson's trademark. Baby's Formula used at least two cartons of boxes to market their ready-to-use infant formulas in grocery stores and at least two labels, one yellow and one red, which appeared to be attached to the cartons. The improper Enfamil lettering was on these labels. The district court found both labels appeared on the first carton. On the yellow label, the word "Enfamil" appeared in letters much larger than the list of the other ingredients referred to, while on the red label the word "Enfamil" appeared in more conspicuous display than before.

The appellees then adopted another carton which did not indicate that the product was manufactured or prepared by Baby's Formula.

In addition the district court found that the cap used on one of the bottles in which the appellees' formula was sold was changed "to one prominently portraying the trademark Enfamil, apparently to go with the new carton design."

No one package, label, cap, etc. was found by the district court to constitute the improper use of the trademark. Apparently, the whole pattern of the appellee's actions in marketing the retail ready-to-use formula taken together was improper.

As previously indicated, Mead-Johnson was aware of Baby's Formula's plans to market in grocery stores a ready-to-use baby formula containing Enfamil. Mead-Johnson's agent, Mr. Kronen, testified that he was aware of the appellee's plan in May, 1966.[1]

The district court found that at this time, the appellee was using its new package for discharge packs. These were packages containing six bottles of appellee's product which were given to mothers upon discharge from the hospital. At the time of the meeting the new packages were in effect.

Appellant's position is that although Mead-Johnson may have been aware of Baby's Formula's proposed non-infringing use of Enfamil in a retail product, they had no reason to know the proposed changes would include an infringing use.

1. The appellant's brief at page 12, note 13, states that "there is no evidence to indicate plaintiff's representatives had ever seen newspaper advertisements which indicated that the Enfamil product of defendant was to be distributed through grocery stores." Mr. Kronen testified that the contrary was true; he had seen such an ad prior to the May, 1966 meeting. Appellant's citation in this footnote of Mr. Damanda's testimony is misleading as a reading of his entire testimony on this question shows clearly he said such ads appeared in May, 1966.

The record clearly supports the findings of the trial court that the use of the name Enfamil by Baby's Formula, Inc., up until the period beginning in May, 1966, was fully known to appellant, Mead-Johnson, but also that it was a non-infringing use. The record also fully supports the finding of the trial court that at some time prior to the filing of suit in September, 1966, Mead-Johnson had learned of the change in designs and the change in marketing practices and protested against this. Such protest was met by the invitation of the appellee that if Mead-Johnson didn't approve of what Baby's Formula was doing it could get relief in court. Suit was filed in August, 1966. Thus, there was a period of from middle May through August, at most, during which infringements were occurring and prior to the filing of suit.

■ As indicated originally, Mead-Johnson sought an injunction and an accounting. The trial court granted the injunction but held that "it was not until August, 1966, that the plaintiff objected to the use by the defendant. Since 1959 the corporate defendant has been openly using the name 'Enfamil' and the plaintiff's inaction over a period of years is sufficient to support the affirmative defenses of laches and acquiescence." In its conclusions of law, the court said, "Acquiescence of long standing and the defense of laches have been shown and plaintiff, Mead-Johnson & Company, is not entitled to an accounting, an award of damages nor attorneys' fees," citing McLean v. Fleming, 96 U.S. 245, 24 L.Ed. 828 (1877); Anheuser-Busch Inc. v. Du Bois Brewing Co., 175 F.2d 370 (3 Cir., 1949); Ambrosia Chocolate Co. v. Ambrosia Cake Bakery, 165 F.2d 693 (4 Cir., 1947), cert. den. 333 U.S. 882, 68 S.Ct. 914, 92 L.Ed. 1157; Oakland Co. v. Kroger Co., 116 U.S.P.Q. 1957 (S.D.Ill. N.D.1957).

The trial court erred in considering the long years of non-infringing use by Baby's Formula as relevant to the defense of laches or as indicating acquiescence to a course of illegal conduct. At most, although it is somewhat doubtful as to just when Mead-Johnson actually learned of the infringing use, the period between the learning of this infringing use and the filing of suit was not more than four months. Such a period of time involving investigation, protest and the preparation of suit, could not legally constitute laches. Whatever infringement occurred after May 1st seems to have continued until the case was finally decided during the summer of 1967. There was thus a substantial period during which, unless there was some other basis for denying relief, appellant would clearly be entitled to an accounting. The cases referred to by the trial court are all clearly distinguishable. In Anheuser-Busch v. Du Bois Brewing Co., supra, the court held that a delay of 31 years in seeking redress not only effected a bar to an accounting for profits but constituted à total abandonment of Anheuser Busch's claim to exclusive use of the Budweiser trademark. In Ambrosia Chocolate Co. v. Ambrosia Cake Bakery, 165 F.2d 693 (4 Cir.), the court denied the plaintiff's claim for any relief, even an injunction, against the defendant's use of the name "Ambrosia" in its cakes, because the court found that the plaintiff was aware of, and indeed encouraged, the defendant's use of the name for over eight years before filing suit. In Oakland Co. v. Kroger, supra, the court held that laches would bar an accounting for profit because the plaintiff knew of the complained-of use for at least four years before filing suit.

■ The statute, 15 U.S.C.A. § 1117, does not require an accounting under all circumstances. However, there must be a substantial basis for denying an accounting. Here the trial court found that Baby's Formula "acted in good faith," commenting on the fact that it relied upon advice from counsel. Upon a reading of the letter from the lawyer in the record, however, it appears that counsel did not give a clear "go-ahead." In effect it said that if the defendant's acts would not deceive the public, then there would be no infringement. Coun-

sel did not flatly advise the appellee that it was a non-infringing course of conduct.

In view of the fact that the trial court determined that the appellant was not entitled to an accounting because of laches and acquiescence, it is necessary for the case to be remanded for the trial court to give further consideration to the facts and to determine whether any other basis existed in the record in which, by use of proper discretion, accounting should or should not be granted.

The appellant also complains of the dismissal of the case against the individual defendants. Appellees seem to support this position on the ground that to hold the individuals liable for the actions of the corporation would require a "piercing of the corporate veil." In point of fact appellees have the cart before the horse. There can be no doubt but that a trademark, like a patent, can be infringed by an individual. It is infringed when an individual performs the act or does the things that the patent or trademark law protects against. The fact that the persons thus acting are acting for a corporation also, of course, may make the corporation liable under the doctrine of respondeat superior. It does not relieve the individuals of their responsibility. Obviously here if there was an infringement by the corporation, this infringement was caused by some one or more persons either officers or employees of the corporation who caused the acts to be done. We are not in a position initially to determine to what extent the named individuals were liable, although it appears that there could be no doubt but that Mrs. Rosalind Gorman Stone, the unpaid treasurer of the firm, established that she had nothing to do with the infringements. The case must also be remanded to the trial court for the purpose of ascertaining who of the persons named as defendants caused the infringing acts which the court found as a fact to have existed. The court will then be in a position to ascertain what accounting, if any, is to be had as against such persons.

The judgment is reversed and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.