## NAVY CLUB OF UNITED STATES OF AMERICA v. ALL–NAVY CLUB OF UNITED STATES OF AMERICA.

### Civ. A. No. 852.

United States District Court
D. Rhode Island.

Sept. 1, 1949.

Alan P. Cusick, Providence, R. I., for plaintiff.

William P. Sheffield, Newport, R. I., for defendant.

HARTIGAN, District Judge.

This is an action arising under the copyright laws of the United States. The complaint alleges infringement of plaintiff's copyright, infringement of its trade name and unfair competition. The plaintiff prays for a permanent injunction enjoining defendant from infringing its copyright and trade name. At the trial the plaintiff waived its claim to monetary damages.

The plaintiff, Navy Club of the United States of America, is a corporation duly incorporated and organized under the laws of the United States on June 6, 1940, P. L. No. 546, 76th Congress, Chap. 239, 3d Session, 36 U.S.C.A. § 140 et seq., and has its principal office in Rockford, Illinois.

The defendant, All-Navy Club of the United States of America, is a corporation organized under the laws of Rhode Island, January 22, 1945, and has its principal office in Newport, Rhode Island.

In 1938 the plaintiff's predecessor began using the name "Navy Club of the U. S. A." Since 1938 this name has been used in national publicity throughout the United States in various activities to identify the plaintiff.

The plaintiff has local branch units designated as "Ships" in 26 states and the District of Columbia with a membership of about 15,000 persons who have served or are now serving in the United States Navy, Marine Corps or Coast Guard. It has a ladies' auxiliary which was organized about 1940 with approximately 5,000 to 6,000 members which uses the same name and insignia as the plaintiff.

Since 1938 the plaintiff has published a national publication, "The Quarterdeck". Pamphlets entitled "Hit The Deck" and "Roster of Ships", used in publicity and solicitation of new members, have also been

distributed on a national basis. Some local "Ships" publish monthly papers. Since 1938, with the exception of the war years, the plaintiff has held annual conventions. The plaintiff has distributed decals of its insignia for use on windshields, doors, etc. and also lapel buttons, on a national basis.

I find that by the year 1945 a secondary meaning had become attached to the plaintiff's name by such continued and extended public use.

The defendant's predecessor was never known by the name of "All-Navy Club of U. S. A.". The defendant acquired its name at the time of its incorporation in January 1945, although it contends it began the use of it on its original life ring emblem in 1943.

The plaintiff in its brief states that it "is not seeking to monopolize the phrase 'Navy Club'," but that it is attacking "defendant's use of its present corporate name 'All-Navy Club of the United States of America'" because of its close similarity to plaintiff's name.

Sigfred A. Sandeen, who was a member of the plaintiff's predecessor which was organized in 1938, obtained a certificate of copyright registration for title and print of insignia in conformity with section 55 of the Act to Amend and Consolidate the Acts respecting Copyright, Approved March 4, 1909, as amended by the Act approved March 2, 1913, 17 U.S.C.A. § 55. It shows date of publication in the United States February 7, 1940.

Sandeen on May 29, 1940, assigned to the plaintiff his right, title and interest in the copyright and the assignment was recorded in the Copyright Office on June 7, 1940.

Below are reproductions of the insignia of the plaintiff and the defendant.

I find that there is no confusing similarity between these insignia that would likely mislead an ordinary person to believe that the defendant's insignia denoted the plaintiff. The shapes and component parts of both are very different. The plaintiff makes use of two crossed anchors, a wheel and the emblem of the United States Marine Corps. The defendant uses an ordinary life ring with a rope around it and an upright anchor in the centre of the life ring. The names of the organizations which appear on the wheel and life ring are the nearest approach to confusion.

Even though we find that the defendant does not infringe the plaintiff's copyright, this court, nevertheless, has jurisdiction to decide on substantially the same facts, the plaintiff's claim of unfair competition. Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148.

In Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 336, 59 S.Ct. 191, 201, 83 L.Ed. 195, the court said: "The rights of Nu-Enamel Corporation to be free of the competitive use of 'Nu-Enamel' may be vindicated, also, through the challenge of unfair competition, as set out in the bill. The remedy for unfair competition is that given by the common law. The right arises not from the trademark acts but from the fact that 'Nu-Enamel' has come to indicate that the goods in connection with which it is used are the goods manufactured by the respondent. When a name is endowed with this quality, it becomes a mark, entitled to protection. The essence of the wrong from the violation of this right is the sale of the goods of one manufacturer for those of another."

In the instant case, the name of the plaintiff was made part of its copyrighted

682

insignia. The defendant argues that the plaintiff's name is made up of merely all descriptive terms and is, therefore, not entitled to protection. But assuming that the elements of the plaintiff's name are all descriptive in character, it still does not follow that the name is not entitled to protection. It is clear that the first user of such a name will be protected against a second user if the name has acquired a "secondary meaning", that is, if the name has come to be identified in the mind of the public with the products or services sold by the first user, then a second user will be enjoined from an unfair use of the same or a confusingly similar name. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., supra; General Finance Loan Co. v. General Loan Co., 8 Cir., 163 F.2d 709, certiorari denied 332 U.S. 851, 68 S.Ct. 356, 92 L.Ed. 421; Little Tavern Shops v. Davis, 4 Cir., 116 F.2d 903; Cady v. Schultz, 19 R.I. 193, 32 A. 915, 29 L.R.A. 524, 61 Am.St. Rep. 763; Elgin Nat. Watch Co. v. Illinois Watch Case Co., 179 U.S. 665, 21 S.Ct. 270, 45 L.Ed. 365; and Merlino v. Schmetz, 66 R.I. 425, 20 A.2d 266.

The plaintiff does not challenge the defendant's use of the term "Navy Club" as an element in its name. The plaintiff's attack is directed to defendant's name in its entirety because of its close similarity to the plaintiff's name.

The defendant argues that even assuming a secondary meaning has attached to the plaintiff's name, the plaintiff is not entitled to relief in the absence of actual confusion of the two names by the public and intentional fraud on the part of the defendant.

About 1938 or 1939, John M. Hopf and three or four others organized "All-Navy Club" in Newport that was not registered. It later had about 15 members and was inactive from 1940 to 1942.

All-Navy Club, Ship No. 1, was incorporated in Rhode Island on November 15, 1943. It was a social organization in which Hopf was one of the incorporators and was limited to Rhode Island.

Hopf was also one of the incorporators of the defendant. He testified that the defendant has one unit located in Newport, with "around 60 members", and an "over-all membership" of "less than 1500" who are on "what we call a national roll." He also testified that the members of defendant's Newport unit are the only ones that pay dues and that the national members "pay an initiation fee of $1.00 and that makes them a life member on the national roll."

It is significant to note that Hopf was a member of the plaintiff and its predecessor from 1939 to 1946 during which time he was familiar with the name and insignia of the plaintiff. His testimony gave me the impression that he and the defendant are one and the same.

There is some evidence here of confusion between the parties, especially in the delivery of mail.

■ The plaintiff here is seeking equitable relief and actual confusion need not be shown. Stork Restaurant v. Sahati, 9 Cir., 166 F.2d 348.

In General Finance Loan Co. v. General Loan Co., 8 Cir., 163 F.2d 709, 712, the court said: " * * * The ultimate question is not, therefore, whether the evidence shows actual confusion but whether confusion is likely to result in the use of similar corporate names of parties engaged in kindred businesses in the same territory, or whether the names of the defendants are so distinguished from that of the plaintiff as to prevent any probable confusion. Furniture Hospital v. Dorfman, 179 Mo.App. 302, 166 S.W. 861, 863. The question of confusion is one of fact, but it is not incumbent upon the plaintiff to allege and prove actual confusion or deception, but only such similarity of names with other facts and circumstances as to show that confusion may result. * * *"

■ It seems to me that the natural and probable results of the defendant's use of its present name is to cause confusion on the part of the public.

■ Even if there is no intention of fraud on the part of the defendant in the use of its name, the plaintiff is, nevertheless, entitled to equitable relief regardless of the defendant's intention. Stork Restaurant v. Sahati, supra; Little Tavern Shops v. Davis, supra; and Yellow Cab Co.

of Rhode Island v. Anastasi, 46 R.I. 49, 124 A. 735.

The defendant contends that the plaintiff is barred by laches from seeking an injunction. It is true that the plaintiff first objected to the defendant's use of its name in a letter dated April 17, 1947, almost three years after the defendant claims it first used its name. It is also true that Mc-Grail, an officer of the plaintiff, saw an article in "The Fleet Review" of January 1945, in which defendant's insignia and name were used.

The defendant in its answer failed to plead "laches" as required by Rule 8(c), Federal Rules of Civil Procedure, 28 U.S. C.A. Nevertheless, I find no merit in this argument. Three years does not seem to be an unreasonable time. In the circumstances here, the mere passage of time is immaterial. In my opinion, the delay on the part of the plaintiff in bringing this action "was neither conduct nor negligence which could be held to destroy the right to prevention of further injury." Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 145, 32 L.Ed. 526; Stork Restaurant v. Sahati, supra; cf. Ambrosia Chocolate Co. v. Ambrosia Cake Bakery, 4 Cir., 165 F.2d 693, certiorari denied 333 U.S. 882, 68 S.Ct. 914, 92 L.Ed. 1157.

The plaintiff is entitled to a permanent injunction enjoining the defendant from infringing its trade name.

Judgment, therefore, may be entered for the plaintiff.