### HOUSTON SPORTS ASSOCIATION, INC., Plaintiff,

v.

### ASTRO-CARD CO., INC., Defendant.

### Civ. A. No. H–81–711.

United States District Court,
S. D. Texas,
Houston Division.

Sept. 1, 1981.

Ronald Scott, Bracewell & Patterson, Houston, Tex., for plaintiff.

Joe S. Maida, Maida & Lincoln, Houston, Tex., for defendant.

## MEMORANDUM AND ORDER

McDONALD, District Judge.

This is an action brought under the trademark and unfair competition laws of the

United States and the State of Texas. Jurisdiction is conferred on this Court by 15 U.S.C. §§ 1121, 1125 and 1126(h) and 28 U.S.C. §§ 1331 and 1338. Plaintiff contends that its trademarks and servicemarks are currently outstanding and valid and are being infringed upon by defendant without license, right or privilege and that this alleged unfair competition and false designation of origin, false description and representations has caused and continues to cause plaintiff injury. Defendant does not challenge the validity of plaintiff's trademarks or servicemarks. Plaintiff contends that on January 9, 1973 it made a bulk sale to defendant of merchandise bearing the Astros trademark and gave defendant the right to sell those specific souvenirs conveyed by this bulk sale and did not sell to the defendant the right to authorize manufacturers to produce merchandise bearing the Astros trademarks. Defendant contends that the sale on January 9, 1973, conveyed to him the right not only to sell the souvenirs which he had on hand but the right to manufacture and/or market items bearing the Astros trademarks. Defendant also contends that he has operated his business since that time selling the souvenirs that were conveyed on January 9, 1973 and has on several occasions manufactured and/or authorized the manufacture of Astros items and has sold these items to organizations including the plaintiff and that the plaintiff is barred in this action by laches and estoppel.

This case was tried to a jury on June 23–25, 1981. On June 25, 1981, the Court granted the plaintiff's Motion for a Directed Verdict in part. The Court ruled that the bill of sale of January 9, 1973 (Plaintiff's Exhibit 5) was clear and unambiguous and by its terms was clearly a bulk sale conveying only specific Astros souvenirs. The defendant admitted that no person with the Houston Sports Association told him he had the right to reorder goods that had Astros emblems on them and sell them (Tr. 34). The defendant's only basis for his contention that he had such a right was his belief that the plaintiff should have realized that he would manufacture and/or market

Astros items after he depleted his stock in order to continue to operate his business. The Fifth Circuit has held that "[T]he determination of the parties' intent ceases to be a question of law and become a question of fact only where the documentation is ambiguous." *Fujimoto v. Rio Grande Pickle Co.*, 414 F.2d 648, 654 (5th Cir. 1969). "The preliminary question whether an ambiguity exists is not a question of fact and is for the court to decide." *Fujimoto, supra* at 654 quoting from *Freeman v. Continental Gin Co.*, 381 F.2d 459, 465 (5th Cir. 1967). The Court reserved ruling on that portion of the plaintiff's Motion for a Directed Verdict relating to the equitable defenses of laches and estoppel which the defendant had asserted. The parties agreed to submit these issues to the Court as well as plaintiff's claim for damages and the jury was dismissed.

The Court has reviewed the Supplemental Memoranda of Law filed by the parties with respect to these issues. Having considered the evidence adduced at trial and the applicable law, the Court finds that plaintiff is barred by laches from recovering damages for any infringement prior to June 9, 1980. The Court further concludes that the plaintiff's claims are not barred by the doctrine of estoppel. Therefore, plaintiff is entitled to recover from the defendant damages for infringement after June 9, 1980 and is entitled to injunctive relief.

 This Court has previously considered the burden of proof and elements of laches:

> Three independent criteria must be established before laches can be applied. "The defendant must show: (1) a delay in asserting a right or claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted." *Save Our Wetlands v. U.S. Army Corps of Engineers*, 549 F.2d 1021, 1026 (5th Cir.), cert. denied, 434 U.S. 836, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977).

*Bean v. Southwestern Waste Management Corp.*, 482 F.Supp. 673, 675 (S.D.Tex.1979).

The doctrine of estoppel, however, requires a greater showing than mere unreasonable delay and prejudice. "To make out a claim for equitable estoppel the defendants would have to demonstrate at least intentional deception through concealment or inaction, [citations omitted] or gross negligence amounting to constructive fraud [citations omitted]." *Matter of Henderson*, 577 F.2d 997, 1001 (5th Cir. 1978). The two concepts differ not only in their elements but in their consequences as well. If the defendant establishes that the plaintiff is barred by the doctrine of laches, the plaintiff may not then recover for any damages prior to the time the plaintiff notified the defendant that it considered its actions to constitute infringement. If the defendant carries its burden of demonstrating an estoppel defense, however, the plaintiff is barred from recovering not only past damages but future damages and injunctive relief as well. *Matter of Henderson, supra, Dymo Industries, Inc. v. Monarch Marketing Systems, Inc.*, 474 F.Supp. 412, 414 (N.D.Tex.1979).

█ Based on the evidence adduced at trial, the Court concludes that the plaintiff delayed asserting his claims of trademark and servicemark infringement. The testimony established that the defendant had been selling unlicensed Astros T-shirts since 1973 based upon the mistaken belief that the bill of sale issued in that year entitled him to do so. Sometime in early 1980, an official of the plaintiff called the defendant and complained of the plaintiff's actions because he was not licensed and expressed an interest to resolve this matter and license the defendant. The defendant responded that he considered that he had a right to manufacture and/or market these items. Exactly what transpired during this conversation was not made clear at trial. The defendant did not hear from the plaintiff again until he received a letter from the plaintiff's attorney dated June 9, 1980 (Plaintiff's Exhibit 4). In that letter, plaintiff advised the defendant as follows:

It has come to the attention of our client, Houston Sports Association, Inc. ("HSA"), that you or persons associated with you have been manufacturing and/or marketing T-shirts and other items bearing names, words and symbols relating to the Houston Astros baseball club and the Astrodome. You are hereby advised that these are the registered marks and exclusive property of HSA and its affiliates.

Accordingly, HSA demands that you, and all persons or entities under your control, forthwith cease the manufacture, marketing, or other commercial exploitation of such items. In the event that HSA is not reasonably assured within ten days after the date hereof that you have so ceased, HSA will be compelled to pursue all lawful legal remedies to protect its rights.

The Court concludes that not until this letter, did the plaintiff put the defendant on notice of its claim of infringement and request the defendant to stop manufacturing and/or marketing the unlicensed items. Defendant testified that ever since he began his business he sold items to the plaintiff itself and was often in and out of the plaintiff's offices. If the defendant, however, failed to show that the plaintiff had actual knowledge of the defendant's actions, the plaintiff, at a very minimum, should have known of the unauthorized use of its trademarks prior to its assertion of claim, and at least since 1975. In 1975, the Astros uniform was changed significantly and the defendant began manufacturing and marketing Astros T-shirts bearing the new Astros uniform colors. Notwithstanding this open and obvious use of plaintiff's trademarks and servicemarks, the plaintiff rested on its rights an additional five years before putting the defendant on notice of its claim of infringement.

██ In order to avail itself of the laches defense, the defendant must not only show an unreasonable delay in asserting its claim but must demonstrate that the delay caused him material prejudice. Courts have held that a prolonged delay gives rise to a presumption that the alleged infringer was prejudiced. *Dymo Industries, Inc., supra* at 415. *See also Baker Mfg. Co. v. Whitewater Mfg. Co.*, 430 F.2d 1008 (7th

Cir. 1970), *cert. denied*, 401 U.S. 956, 91 S.Ct. 978, 28 L.Ed.2d 240 (1971); *Whitman v. Walt Disney Productions*, 263 F.2d 229 (9th Cir. 1958); and *Jones v. Ceramco, Inc.*, 387 F.Supp. 940 (E.D.N.Y.1975), aff'd, 526 F.2d 585 (2d Cir. 1975). Moreover, the evidence offered at trial supports a showing of prejudice to the defendant. The defendant "slept" for some seven years and while the unlicensed products sold by the defendant represented only a small portion of his total net profits, the defendant realized substantial benefit from their accumulated sales from 1973–1980 and from the goodwill acquired in the selling of Astro related products. To permit the plaintiff to recover damages for this time period would unfairly penalize the defendant who has acted on the good faith belief that he had the right to sell these products. Consequently, the Court concludes that the plaintiff is barred by the doctrine of laches from obtaining any damages it has suffered from the defendant's manufacture and/or marketing of items which are the subject of the claims of infringement from the date he began those sales until his receipt of the June 9, 1980 letter.

██ The defendant has not offered any evidence, however, to support a finding that the plaintiff should be estopped from claiming damages after the receipt of the June 9, 1980 letter and injunctive relief. The plaintiff has not been guilty of any intentional deception or gross negligence amounting to constructive fraud. There was no conduct, other than silence, that might have affirmatively mislead the defendant into believing that the plaintiff had abandoned its rights. Silence, without more, is insufficient to support the defense of estoppel. *Henderson, supra; Dymo Industries, Inc., supra*; and *Holiday Inns, Inc. v. Holiday Inn*, 364 F.Supp. 775 (D.S.C.1973). *See also Menendez v. Holt*, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526 (1888).

██ The defendant seeks to rely on those cases which have held that estoppel can be established where notification of an infringement is given and no further action is taken despite continued infringement. *See*

*e. g., Continental Coatings Corp. v. Metco, Inc.*, 464 F.2d 1375 (7th Cir. 1972). The plaintiff notified the defendant by letter of June 9, 1980 that his manufacture and/or marketing of items bearing the names, words and symbols relating to The Houston Astros Baseball Club and the Astrodome violated the plaintiff's trademarks and servicemarks. The plaintiff's failure to institute this suit until March 30, 1981, maintains the defendant, was an unreasonable delay and affirmatively misled the defendant into believing that the plaintiff had abandoned its claim. The Court finds, however, that the delay of less than a year between the time that plaintiff notified the defendant of its claim and the time when the plaintiff filed suit was not so long as to constitute an unreasonable delay. This lapse in time is insufficient, without further conduct on the part of the plaintiff, to affirmatively mislead the defendant into believing that the plaintiff has abandoned its rights. *See* for example, *Tisch Hotels, Inc. v. American Inn, Inc.*, 350 F.2d 609, 615 (7th Cir. 1965), where no estoppel was found where the infringement was discovered in 1960, the demand to cease was made in August of 1961 and the suit was not filed until March of 1963. The court recognized the delay but held that there was not abandonment.

In light of the above, the Court concludes that the plaintiff is barred by the doctrine of laches from claiming damages for any infringement of its trademark and servicemark rights between 1973 and the receipt of the June 9, 1980 letter. The defendant has failed to prove that the plaintiff is barred by estoppel and the plaintiff may recover for any damages it suffered after its June 9, 1980 notice of its claim of infringement. Moreover, the plaintiff is entitled to injunctive relief to prohibit any further infringement of its trademark and servicemarks.

With respect to the amount of damages, if any, suffered by the plaintiff after defendant's receipt of the June 9, 1980 letter, the parties are encouraged to reach agreement. If agreement cannot be accom-

plished within fifteen (15) days of the entry of this Order a hearing will be set for the purpose of receiving additional evidence, if any, and hearing the arguments of the parties. The parties are likewise encouraged to reach agreement on the wording of the injunction. If agreement cannot be accomplished each party shall submit to the Court its proposed injunction within fifteen (15) days of the entry of this Order.

The Clerk shall file this Memorandum and Order and provide a true copy to counsel for all parties.